300 So.2d 805 (1974)
Mrs. Bessie Bradshaw WRIGHT et al.
v.
JACKSON MUNICIPAL AIRPORT AUTHORITY.
No. 47571.
Supreme Court of Mississippi.
September 23, 1974.
Rehearing Denied October 14, 1974.
*806 Butler, Snow, O'Mara, Stevens & Cannada, Lawrence J. Franck, Kenneth W. Barton, Jay A. Travis, III, Roger C. Landrum, H.A. Courtney, Jackson, for appellants.
*807 Perry, Phillips, Crockett & Morrison, Lester F. Smith, Jackson, for appellee.
GILLESPIE, Chief Justice:
This is an appeal from a decree of the Chancery Court of Hinds County, Mississippi, denying damages to Mrs. Bessie Bradshaw Wright and others (landowners) in their suit against Jackson Municipal Airport Authority (Airport) for the recovery of damages for an avigation easement over property of landowners.
This is the second appearance of this case in this Court. In Jackson Municipal Airport Authority v. Wright, 232 So.2d 709 (Miss. 1970), this Court held that Airport had appropriated an avigation easement over properties of landowners in 1963, and that Airport was liable for the value of the easement so taken. However, the case was reversed because the trial court computed damages as of the time of trial when damages should have been computed as of the time the easement was acquired in March 1963. This Court reversed and remanded the case solely for the assessment of damages computed as of March 1963. After remand two developments occurred which resulted in the trial court denying damages to landowners except damages pertaining to 4.01 acres, concerning which the parties agreed.
On or about July 2, 1971, before the Chancery Court of Hinds County assessed damages for the avigation easement after remand from this Court, Airport filed eminent domain proceedings in Rankin County, and an eminent domain court was organized to entertain said suit which involved 51.12 acres of the land over which Airport had acquired the avigation easement in 1963. Airport stated in its eminent domain petition that:
Your petitioner further shows the Court that it has full and complete authority to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, and protect airports and air navigational facilities within this state, and to construct and maintain roads and streets thereto, together with the right to condemn, purchase, or acquire by gift lands or interests therein for such purposes; that by virtue of its said authority petitioner is in the process of extending the main East/West boundary run-way at said airport facility in order to accommodate larger jet aircraft which will be using said airport, and which will necessitate enlargement of the clear zone approach and transitional zone area over and above and in the immediate vicinity of the aforesaid described land.
On the trial of the eminent domain suit, the standard jury instruction was given as follows:
The defendants are entitled to due compensation, not only for the value of the property to be actually taken as specified in the application, but also for damages, if any, which may result to them as a consequence of the taking; ... .
The jury returned a verdict for $175,000, which was thereafter paid into court and the funds accepted by landowners.
In connection with the construction of State Highway 25, which traverses the landowners' property, the Mississippi State Highway Commission on May 11, 1970, acquired by purchase a right-of-way. By warranty deed landowners conveyed a fee simple title to 14.54 acres to the Highway Commission, being a portion of the property over which Airport had previously appropriated an avigation easement. The Highway Department paid a cash consideration for this deed. The effect of the acquisition of the 51.12 acres by Airport in the condemnation proceedings and the sale of 14.54 acres to the Highway Department left landowners owning 4.01 acres of the tract over which Airport had acquired the avigation easement in 1963. An agreement was reached concerning the avigation easement damages as to the 4.01 acres.
The questions of law concerning landowner's claim for damages for the avigation *808 easement pertaining to the 51.12 acres taken by Airport in eminent domain are different from those involving the 14.54 acres conveyed to the Highway Department. These two questions will be separately considered.

I
Did the trial court err in dismissing landowners' claim for damages for the avigation easement pertaining to the 51.15 acres condemned in the eminent domain suit before the damages were assessed in the suit involving the avigation easement?
A chronology of events is an appropriate beginning of the discussion of the stated question. (1) In March 1963, landowners filed an inverse condemnation proceeding in the Chancery Court of Hinds County to recover compensation for the taking by Airport of an avigation easement over 69.67 acres of land. (2) In January 1969, the chancery court adjudged that Airport had taken an avigation easement and awarded damages as of the date of trial. (3) In February 1970, this Court affirmed that part of the chancery court decree holding the avigation easement had been taken but remanded the case to the chancery for the sole purpoe of determining damages as of March 1963. (4) In March 1971, Airport instituted eminent domain proceedings to acquire fee simple title to 51.12 acres which was part of the land over which Airport had previously taken an avigation easement. (5) In April 1971, final judgment was rendered in eminent domain court awarding landowners $175,000 for the 51.12 acres. (6) In July 1971, Airport paid $175,000 to the circuit court and the clerk paid that sum to landowners. (7) In August 1972, the chancery court denied recovery for taking the avigation easement.
The stated question has several points of inquiry.
a. The arguments raise the question whether the doctrine of res judicata precludes recovery for the avigation easement. Airport filed an answer setting up the defense of res judicata and the Court heard the issue separately and sustained Airport's position.
In Golden v. Golden, 246 Miss. 562, 151 So.2d 598 (1963), the Court held that:
The essentials to constitute res judicata are (1) identity in the thing sued for; (2) identity in the cause of action; (3) identity of persons and parties to the action, and (4) identity of quality of the person for or against whom the claim is made. 246 Miss. at 566-567, 151 So.2d at 599.
The first two of the four essentials are not present in this case. The two actions involved different issues, burden of proof, and evidence. The inverse condemnation suit filed by landowners to recover for the avigation easement is based on the self-executing provisions of Section 17, Mississippi Constitution (1890). The eminent domain suit filed by Airport is a statutory procedure whereby the Airport exercises the rights of the sovereign to subject private land to public use. The landowners in the avigation easement had the burden of proof. In eminent domain the burden of proof is on the condemnor. The proof of damages in the easement suit is governed by March 1963 land values. In the eminent domain suit March 1971 values control. Thus it appears that the first two of the four elements necessary to constitute the merger and bar aspect of res judicata were not present. 46 Am.Jur.2d, Judgments § 410 (1969).
The collateral estoppel aspect of res judicata is not applicable because the eminent domain suit did not necessarily involve the issue as to avigation easement damages as of March 1963. Cf. CIT Corporation v. Turner, 248 Miss. 517, 157 So.2d 648 (1963).
b. Airport contends that landowners are estopped to claim damages for the avigation easement because (1) acceptance by landowners of the payment of the eminent *809 domain judgment, (2) landowners' failure to appeal from the eminent domain judgment, (3) landowners ought to have enjoined Airport from proceeding in the eminent domain suit without separating the suit for damages from the avigation easement, and (4) landowners took inconsistent positions in the two suits and are judicially estopped.
In our opinion reasons 2 and 3 are without merit and do not require discussion.
The argument based on acceptance of the payment of the eminent domain judgment is apparently grounded on the premise that that judgment included the damages for the avigation easement. We reject this premise for several reasons.
At the time Airport filed its petition in eminent domain it had been litigating with landowners for eight years, and it knew the chancery court had decreed that Airport had appropriated the avigation easement, and this Court had remanded the case for assessment of damages. In other words, Airport owed landowners for the easement, and it still owes them absent an affirmative showing that they have been paid. The record does not so show. Airport's appraisers ought to have considered the easement burdening this land in arriving at its value.
In the eminent domain suit Airport could not condemn an easement it had already appropriated in 1963. It was Airport's sole responsibility under Mississippi Code Annotated section 11-27-5 (1972) to "describe in detail the property" sought to be condemned, and no other court could control the proceeding to assess the damages. Miss. Power & Light Co. v. City of Clarksdale, 288 So.2d 9 (Miss. 1973).
It is significant that during the trial of the eminent domain suit a witness mentioned the overflights and Airport's counsel objected on the ground "that was a subject of another lawsuit," and the court sustained the objection.[1] It appears that counsel for Airport then understood that avigation easement damages were not involved in the eminent domain suit and his statement and the court's ruling were calculated to lead the jury to believe likewise. The general rule is that where land taken by eminent domain is already subject to a servitude such as an easement, the servitude must, if its existence decreases the value of the fee, be taken into consideration in determining the amount of the award. 27 Am.Jur.2d, Eminent Domain § 288 (1966).
It is also argued that landowners are judicially estopped. In Sullivan v. McCallum, 231 So.2d 801 (Miss. 1970), it is stated:
Judicial estoppel differs from equitable estoppel in that it is not necessary to show elements of reliance and injury since it is based on expedition of litigation between the same parties by requiring orderliness and regularity in pleading. Great Southern Box Co. v. Barrett, 231 Miss. 101, 94 So.2d 912 (1957). It normally arises from the taking of a position by a party to a suit that is inconsistent with a position previously asserted. 231 So.2d at 803.
Landowners were defendants in the eminent domain suit. It does not appear that landowners' position in the two suits was inconsistent.

II.
Does the conveyance to the Mississippi State Highway Commission in 1970 of 14.54 acres of landowners' property over which Airport had previously appropriated an avigation easement preclude landowners' recovery of compensation for the easement pertaining thereto?
*810 In May 1970, the Wrights conveyed the 14.54 acres to the Mississippi State Highway Commission by warranty deed.
The universal rule involving the right to damages after a sale of the property is stated in 2 Nichols, Eminent Domain section 5.21 (1970):
If a parcel of land is sold after a portion of it has been taken (or after it has been injuriously affected by the construction of some authorized public work), the right to compensation, constitutional or statutory, does not run with the land but remains a personal claim in the hands of the vendor unless it has been assigned by special assignment or by a provision in the deed. It is immaterial that the question of compensation is deferred.
One of the cases supporting this proposition is Henritzy v. Harrison County, 180 Miss. 675, 178 So. 322 (1938).
Airport contends that the right to the damages was assigned and by the following provision in the warranty deed to the Highway Commission:
It is further understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damage accrued, accruing, or to accrue to the grantors herein, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed highway, change of grade, water damage, and/or any other damage, right or claim whatsoever.
However, this provision applies to damages resulting from the highway construction. We hold the Wrights are entitled to compensation for the taking in 1963 of the avigation easement pertaining to the 14.54 acres.

III.
The practical question in this case is whether landowners have been paid for the avigation easement. If it affirmatively appears that they have already been paid the case should be affirmed.
In addition to what has been said the Court has considered the instruction quoted above, but this same instruction is given in all cases and in itself has no significance. One of the significant factors in determining whether the avigation easement damages were excluded in the eminent domain case is whether the appraisers, in valuing the 51.12 acres, diminished the value because of the avigation easement. If the appraisers were fully advised of all factors relating to values, and it was Airport's duty to so advise their appraisers, the appraisers knew of the decree of the chancery court and that Airport had appropriated an avigation easement with damages to be assessed in the chancery court. It would follow that they took this into account and diminished the damages accordingly. This is what the law requires.
The fact that the easement had been taken undoubtedly affected the value of the fee and probably resulted in diminished damages for the landowners. The general rule in such matters is stated in 27 Am.Jur.2d, Eminent Domain section 288 (1966):
Where land taken by eminent domain is already subject to a servitude, such as an easement held by the public or by a private owner or by a public service corporation, the servitude must, if its existence decreases the market value of the fee, be taken into consideration in determining the amount of the award. The measure of damages for taking a fee subject to a highway easement is the value of the private title subject to the public servitude. In some cases the damages are ascertained by measuring the effect on the value of the property resulting from depriving the owner of the fee of the streets. The valuation should be arrived at by determining its value subject to the easement, and not by determining its value free from the easement *811 and deducting therefrom the value of the easement.
If it is doubtful whether landowners have been fully paid for the avigation easement by accepting payment of the eminent domain judgment, Airport is responsible for the matter being in doubt. Its clear statutory duty was to describe in detail the property sought to be condemned. It was impractical, if not impossible, to assess damages for the avigation easement as of March 1963 in an eminent domain suit involving 1971 values. Airport should have specifically excepted the avigation easement from the property condemned.
If there is a possibility of landowners being twice paid for the avigation easement, Airport is responsible for the ambiguous state of affairs in this regard. Section 17 of the Constitution does not contemplate leaving in doubt the question whether the owner of private property which has been appropriated for public use has received compensation.
The case is reversed and remanded solely for assessment of damages as of March 1963.
Reversed and remanded.
RODGERS, P.J., and INZER, WALKER and BROOM, JJ., concur.
PATTERSON, SMITH, ROBERTSON and SUGG, JJ., dissent.
ROBERTSON, Justice (dissenting):
I concur in Justice SUGG'S dissent and add only this additional thought.
Back in 1963, airplanes taking off from, and landing at, the Jackson Municipal Airport began to make over-flights over the Wright's property. The Wrights sued the Jackson Municipal Airport Authority for damages. Eight years later the Jackson Municipal Airport Authority brought a suit of its own against the Wrights to condemn and acquire the fee simple title to all of the land and the air space above.
It had a right to do this; it was not limited as an involuntary defendant in the Wright suit to merely acquire a fractional interest in the title (an avigation easement).
The Wrights were not taken by surprise. They had full notice that the Airport Authority wanted full and complete title; no exception was noted in the Application to Condemn.
In my view, the Wright's suit for damages for flying over their land was merged in the eminent domain suit for the fee simple title to the land.
The eminent domain jury was specifically instructed to make the Wrights whole for taking the complete title to their land. I think the Chancellor was eminently correct in sustaining a plea of res judicata to the Wrights' suit to get additional damages, after the eminent domain jury had done what it was specifically instructed to do, that is, give the Wrights full compensation for the taking of the full fee simple title to their lands with the consequent right to fully possess and occupy the whole property including the air space above the land surface.
The Wrights received $175,000 for their land. This award was based on 1971 value, rather than 1963 value. So there is no doubt in my mind that the Wrights have received full and complete compensation for the taking of their property.
PATTERSON, SMITH and SUGG, JJ., join in this dissent.
SUGG, Justice (dissenting):
I dissent from that portion of the majority opinion which permits appellants to recover for the avigation easement on the 51.15 acres condemned by appellee in an eminent domain suit because such recovery would unjustly enrich appellants.
*812 After the decision in Jackson Municipal Airport Authority v. Wright, 232 So.2d 709 (Miss. 1970), appellee determined that the 51.15 acres was needed for airport purposes. Pursuant to this determination, appellee filed an application for a special court of eminent domain on March 3, 1971 for the condemnation of the property. The application clearly set forth that appellee was condemning the fee simple title to the property. The original suit of appellants in the chancery court for damages for an avigation easement over the 51.15 acres and other lands of appellants was pending, but had not been tried.
The case was submitted to the jury in the eminent domain suit under the instruction set forth in Mississippi Code Annotated section 4760 (1942). The instruction authorized the jury to award due compensation, not only for the value of the property to be taken as specified in the application, but also damages, if any, which might result as a consequence of the taking. The jury awarded $175,000 damages in the eminent domain suit.
The chancellor who tried the original avigation easement and all further proceedings in chancery court stated in his opinion:
The jury instruction was the statutory jury instruction, and from the record the only thing that I can glean from it is that all of the land, including the avigation easement, the surface, the mineral; in other words, if we are going into the proposition of what was taken in the eminent domain proceeding, it would seem to this Court that all of the land was taken, that is to say, the fee title to the land.
There can be no doubt that fee simple title to the 51.15 acres was condemned in the eminent domain proceeding and that the judgment was for the land actually taken as specified in the application and all damages as a consequence of the taking.
One of the attorneys for appellants testified in the chancery court suit that no testimony was attempted to be offered to prove the value or the damage for the taking of an avigation easement, and when one of the landowners mentioned in his testimony the fact of the overflights, objection was made by counsel for appellee on the ground that the subject of over-flights was the subject matter of another lawsuit, and the court sustained that objection. Appellants contend that the damages allowed in the eminent domain suit therefore did not include damages for the avigation easement.
It is elementary that the questions to be decided in any lawsuit are determined by the pleadings. In the eminent domain case, the pleadings sought to condemn the fee simple title to the property with no exceptions whatever. The testimony of appellants' attorney in the chancery suit amounts to no more than a collateral attack on the judgment rendered in the eminent domain suit. Appellants filed a cross-appeal from the eminent domain suit, but accepted the amount of the judgment, together with interest thereon, whereupon their cross-appeal was dismissed. If they were dissatisfied with the amount of the judgment and if they felt that damages awarded by the jury were insufficient, they should have pursued their cross-appeal so that the entire record in the eminent domain suit would be before this Court and we could determine the basis on which the allowance for damages was made. Failing in this, appellants are bound by the judgment in the eminent domain suit which, on the face of it, is for the full fee simple title to the property.
If appellants are permitted to collect separately for an avigation easement in addition to the $175,000 recovered in the eminent domain suit for all damages to the 51.15 acres involved, this would permit them to recover damages twice for the same item and thus result in unjust enrichment of the appellants.
*813 The majority opinion states that the practical question in this case is whether appellants have been paid for the avigation easement, and if it affirmatively appears that they have been paid, the case should be affirmed. This is the proper approach to the question and is in line with the statement made by Justice Griffith in Section 39 of Mississippi Chancery Practice. When speaking of the function of an equity court, Justice Griffith stated: "It pierces through the shell of a thing to what is within ..."
When the shell of the eminent domain suit is pierced, it is apparent that damages were awarded not only for the value of the property taken, but also all damages which resulted as a consequence of the taking. Appellants have been paid for the avigation easement and the case should be affirmed as to this question.
I concur with the majority opinion with respect to the 14.54 acres conveyed to the Mississippi State Highway Commission.
PATTERSON, SMITH and ROBERTSON, JJ., join in this dissent.
NOTES
[1] This statement is based on undisputed testimony, the admissibility of which is not at issue. There is no transcript of the testimony in the eminent domain court.