Marvin Edward Hoover was convicted in the Circuit Court of Leflore County, Mississippi of capital murder of Rankin County Deputy Sheriff Travis O. Biddle. The jury did not impose the death penalty, but returned a verdict of life. Hoover was sentenced to life without parole under the recidivism statute, MCA § 99-19-81. We affirm.
On the morning of February 6, 1986 Rankin County Deputy Sheriff T.O. Biddle began transporting Marvin Edward Hoover, Stephen Sutherland and Marty Hitt from the Rankin County Jail in Brandon, Mississippi to the Mississippi Department of Corrections at Parchman, Mississippi in Sunflower County. Hitt sat in the front passenger seat beside the driver, Deputy Biddle; Sutherland sat in the back seat directly behind Hitt, and Hoover sat in the back seat directly behind Deputy Biddle. All three passengers were restrained: Hitt in chains with handcuffs, Sutherland and Hoover in leather restraints with handcuffs.
Hoover and Sutherland cut through their leather restraints with a razor blade at some point during the trip. When they reached Mississippi Highway 8 near Minter City, Leflore County, Mississippi, 3.4 miles west of U.S. Highway 49E, Hoover, still *Page 836 
handcuffed, reached over the back seat and began to choke Deputy Biddle with the handcuff chain. Sutherland reached into the front seat and took Deputy Biddle's gun. Thereafter, Deputy Biddle was shot three times with his own service revolver, dragged from the car and left in a ditch along the road, dead. Sutherland, Hoover and Hitt left the scene in Deputy Biddle's patrol car and were captured a few hours later.
On February 21, 1986, Marvin Edward Hoover and Stephen A. Sutherland were jointly indicted under § 99-19-81 and §97-3-19(2)(a), respectively, as habitual offenders for the capital murder of Deputy Biddle. The State asked for the death penalty.
Sutherland was tried, convicted and sentenced to life in August, 1986. His conviction and sentence were upheld by this Court on January 25, 1989. Sutherland v. State, 537 So.2d 1360
(Miss. 1989).
Marvin Edward Hoover was tried and convicted of capital murder on December 4, 1989. Following the bifurcated sentencing hearing on December 5, 1986, the jury returned a verdict of life. Hoover was adjudicated an habitual offender under MCA § 99-19-81 and sentenced to life without parole on December 15, 1989. Feeling aggrieved with the outcome, he appealed and assigned as error the following:
 I. The Trial Court Erred in Holding a Second Sentencing Hearing and Sentencing the Appellant to Life Without Parole When the Sentencing Jury had Previously Sentenced the Appellant to Life.
 II. The Trial Court Erred in Allowing the State to Present Evidence and Contend to the Jury that the Appellant Fired any of the Shots that Killed the Victim when the State had Previously Contended in the Trial of the Appellant's Co-indictee that he had Fired All of the Shots.
 III. The Trial Court Erred in Refusing the Appellant's Offer into Evidence of the Previous Argument of the State in the Trial of the Appellant's Co-indictee that said Co-indictee had Fired all of the Shots that Killed the victim.
 ASSIGNMENT I.
The essence of this assignment of error is whether the jury in the bifurcated trial on the charge of capital murder had the sole authority to sentence Hoover as a recidivist. Hoover contends that it does. He argues three grounds in support of this contention, each of which is addressed below. At the outset we note that this issue deals with separate and distinct procedures. After careful reading of the record and application of the law, we find no merit in any of these arguments.
Hoover's first argument in support of this assignment of error is that the enactment of § 99-19-101, which established the bifurcated procedure in capital cases wherein "the jury shall set the sentence", eliminated the necessity of the sentencing procedure under the recidivism statute, § 99-19-81, and Rule 6.04 of the Uniform Criminal Rules of Circuit Court Practice, when an indictment charges both capital murder and habitual status and a trial is conducted. He argues that conducting both procedures "can not be done, and should not be done," "is a complete violation of all sense of fairness and justice," and "violates a plain reading of the above statute and rule."
A plain reading of Rule 5.13 of the Uniform Criminal Rules of Circuit Court Practice, together with the statute, § 99-19-101, reveals no language providing that the jury in the guilt/sentencing phases of a bifurcated trial is to decide the issue of recidivism when a defendant is tried as an habitual offender on a charge of capital murder. Likewise, a plain reading of the habitual offender statute applicable in this case, §99-19-81 and Rule 6.04 reveals no such language. Therefore, we find that there is no merit to this argument and it is rejected.
Hoover next argues that § 99-19-101 provides that only the jury in a bifurcated capital trial has the authority to sentence a defendant as an habitual offender when the *Page 837 
indictment charges both capital murder and habitual status. His argument is not that the jury should be told that the defendant may receive life without parole at a separate hearing, but that the jury, as the sole authority to sentence, should be told of all their choices, i.e. death, life, or life without parole. Essentially Hoover is arguing that the jury should determine whether the defendant is an habitual offender and should be sentenced as such by the jury.
Hoover cites Williams v. State, 445 So.2d 798 (Miss. 1984) and Mhoon v. State, 464 So.2d 77 (Miss. 1985), as support of this argument. Reliance on these cases is unfounded.
Williams involved the imposition of the death penalty in a case in which the defendant had not been indicted as, nor tried as, an habitual offender. While Williams makes it clear that only the jury has the power to impose a sentence of death, Id.
at 811, it has nothing to do with whether the jury has the sole authority to impose a sentence of life without parole under the habitual statute.
Mhoon involved a defendant who was indicted as an habitual offender and pleaded guilty to the underlying offense. The sentencing jury imposed the death penalty. Id. at 78. During the sentencing hearing conducted as a result of the guilty plea, the trial court prohibited "defense counsel from presenting testimony speculatively as to whether Mhoon could be sentenced as a recidivist to life without parole." Id. at 83. Finding no error on this point, this Court held that the habitual status of the defendant "was a matter legally just as speculative as whether he might some day be paroled" and therefore, could not be argued to the jury Id. This court did not specifically address the issue of whether Mhoon could have been sentenced as a recidivist had he not received the death penalty.
The case sub judice, as previously stated, deals with two entirely independent and separate procedures, neither of which is dependent upon the other for validity. It is clear that in the procedure for capital murder trials, the jury is to determine the issue of life or death. Nothing in the capital murder statute and rule, nor in the habitual offender statute and rule calls for a hybrid procedure such as that suggested by Hoover when both capital murder and recidivism are at issue. For this reason, and having been offered no authority to the contrary, this argument is rejected.
Finally, Hoover argues that permitting a trial judge to conduct both a guilt and sentencing trial on the charge of capital murder and a separate sentencing hearing on the issue of habitual offender status violates double jeopardy. He is not asking this Court to remand for a new hearing on recidivism; Hoover is asking this Court to hold that the essence under the recividist statute — conducted before the court without a jury, following the bifurcated trial on the charge of capital murder — violated Hoover's right against double jeopardy; he is asking this court to reinstate the jury verdict of life, meaning life with parole.
Hoover relies on DeBussi v. State, 453 So.2d 1030 (Miss. 1984) as authority for his position. DeBussi is distinguishable from the case at bar and therefore, Hoover's reliance onDeBussi is misplaced.
DeBussi addressed the issue of double jeopardy on remand
for a second sentencing hearing under the recidivist statute. This Court held that a remand to allow the state "a second chance at proving the status of DeBussi" would result in double jeopardy. Id. at 1032, 1033-34.
The case sub judice deals with the issue of whether theinitial hearing and sentencing under the recividist statute constituted double jeopardy. The answer is found in the fact that at his sentencing hearing on the matter of whether he should be sentenced to death, Hoover was not put in jeopardy on the enchancement issue.
Hoover's case is legally analogous to cases where a defendant has been convicted of armed robbery or rape, where the jury has fixed sentence at life, and where thereafter, the Court holds a recidivism hearing and imposes an enhanced sentenced. See, e.g.,Sutherland v. State, 537 So.2d 1360 (Miss. 1989); Nicolaou v.State, *Page 838 534 So.2d 168 (Miss. 1988); Davis v. State, 530 So.2d 694
(Miss. 1988); King v. State, 527 So.2d 641 (Miss. 1988);Johnson v. State, 525 So.2d 809 (Miss. 1988); Johnson v.State, 511 So.2d 1360 (Miss. 1987); Edwards v. State,441 So.2d 84 (Miss. 1983); Gaines v. State, 404 So.2d 557 (Miss. 1981); Davis v. State, 377 So.2d 1076 (Miss. 1979). We hold that the jury verdict of life in the sentencing phase of the capital murder trial of Hoover had no effect upon the authority of the trial court to subsequently conduct a hearing under §99-19-81 MCA and Rule 6.04 of the Uniform Criminal Rules of Circuit Court Practice. Hoover's argument to the contrary, while creative, is legally unsupported. For this reason, this argument is without merit and rejected.
 ASSIGNMENT II.
Hoover contends, and the state readily admits, that during the guilt phase and sentencing phase of the trial of the co-indictee, Stephen Sutherland, the state's theory was that Sutherland fired all three shots which resulted in the death of Deputy Biddle. This admission forms the basis for this assignment of error: whether the State may take inconsistent positions under the doctrine of judicial estoppel in the prosecution of co-indictees for the murder of one man. Hoover contends that it can not.
Finding no criminal cases on point, Hoover relies solely on the civil case of Coral Drilling, Inc. v. Bishop, 260 So.2d 463
(Miss. 1972) as support for his position that judicial estoppel should have been applied in this case. Coral Drilling, a civil case, involved the doctrine of election of remedies, not judicial estoppel. However, because judicial estoppel had been raised in that case, this Court addressed the issue of judicial estoppel as follows:
 However, Coral's argument that Bishop was judicially estopped to maintain the second suit deserves comment. Although not sufficiently pleaded, a proper regard for the public policy that upholds the sanctity of an oath should require the court to take notice of this argument. Courts should on their own initiative preclude a party from repudiating in one suit a sworn statement made in support of former litigation.
Judicial estoppel, recognized in civil cases in this State, "arises from the taking of a position by a party to a suit that is inconsistent with the position previously asserted in prior litigation." Daughtrey v. Daughtrey, 474 So.2d 598, 602 (Miss. 1985). See also, Thomas v. Bailey, 375 So.2d 1049 (Miss. 1979);Banes v. Thompson, 352 So.2d 812 (Miss. 1977); Wright v.Jackson Municipal Airport Authority, 300 So.2d 805 (Miss. 1974);Sullivan v. McCallum, 231 So.2d 801 (Miss. 1970); GreatSouthern Box Company v. Barrett, 231 Miss. 101, 94 So.2d 912
(1957). This doctrine is to be used when "the party against whom the estoppel was sought, knowingly, with full knowledge of the facts, asserted a position which was inconsistent with the position in prior judicial proceedings." Thomas v. Bailey,375 So.2d 1049, 1053 (Miss. 1979). The doctrine of judicial estoppel "is based on expedition of litigation between the same parties by requiring orderliness and regularity in pleadings." Id. at 1052. Under these authorities, judicial estoppel will be applied in civil cases where there is multiple litigation between the same parties and one party knowingly "assert(s) a position inconsistent with the position in the prior" litigation.
The foregoing authority and discussion makes it clear that judicial estoppel is applicable in civil cases between the same parties. The case sub judice is a criminal matter. This assignment of error involves inconsistent positions of the State in the prosecution of different defendants. The question before us today is whether the doctrine of judicial estoppel applies equally in criminal cases when the parties are not identical. We find that it does not.
Hoover cited no Mississippi authority for his position that judicial estoppel should be applied against the prosecution in criminal cases in this State. While this Court has addressed the issue of "estoppel" and "collateral estoppel" in criminal cases,See, e.g., Minor v. State, 482 So.2d 1107 (Miss. 1986), andState v. Clements, 383 So.2d 818 (Miss. 1980), we have not addressed the issue of *Page 839 
judicial estoppel in criminal cases before now.
Assuming arguendo that we were to hold that the doctrine of judicial estoppel as defined in our civil cases is equally applicable to criminal cases, Hoover's assignment on this point must fail for lack of identical parties. Thomas v. Bailey,375 So.2d 1049, 1052 (Miss. 1979). Our holding today addresses only the issue of judicial estoppel in criminal cases when different defendants are involved. We leave the issue of whether judicial estoppel would apply in multiple trials of the same defendant for another day.
It is necessary to note that in Hoover's trial the State presented evidence and argued alternative theories to the jury from which they could find guilt: either Hoover killed Deputy Biddle or he aided and abetted Sutherland before the fact, as opposed to after the fact, in the killing Deputy Biddle, thereby becoming a principal. See § 97-1-3 MCA. Over defense objections, the jury was instructed on these theories as follows:
 The Court instructs the Jury that one who is present and aids and assists another in the commission of a crime is a principal, and his guilt in no-wise depends upon the guilt or innocence, the conviction or acquittal of another alleged participant in the crime.
 Therefore if you believe from the evidence in this case beyond a reasonable doubt that this Defendant, Marvin Edward Hoover, did in fact wilfully, unlawfully, feloniously and of his malice aforethought kill and murder Travis O. Biddle, a human being, or did aid and assist Stephen Allen Sutherland in wilfully, unlawfully, feloniously and of Stephen Allen Sutherland's malice aforethought if known to Hoover, in killing and murdering Travis O. Biddle, . . . then it is your sworn duty to find this Defendant, Marvin Edward Hoover, guilty of Capital Murder.
While the first alternative is admitted by the state to be different from the theory argued in the Sutherland trial, we find that sufficient evidence was introduced in support of each alternative to present the jury with two choices from which to choose in reaching their verdict. In any event, the evidence presented a question of fact for the jury. This Court has repeatedly held that when the jury resolves a question of fact and the evidence supports the finding this Court will not disturb that finding on appeal. See McLelland v. State, 204 So.2d 158
(Miss. 1967); Varnado v. State, 338 So.2d 1239 (Miss. 1976);Clemons v. State, 535 So.2d 1354 (Miss. 1988).
Based on the foregoing analysis, we hold that this assignment of error is without merit and is rejected.
 ASSIGNMENT III.
Hoover contends that the argument of the State in the trial of Sutherland constituted an admission against interest and a transcript of that argument should have been admitted in Hoover's trial. He claims reversible error on the basis of its exclusion. Hoover cites as authority Mississippi Rule of Evidence 801(d)(2) and United States v. McKeon, 738 F.2d 26 (2d Cir. 1984).
This issue deals with the exclusion of evidence. Before we can decide whether exclusion of this proffered evidence was reversible we must first determine if the proposed evidence was admissible.
The issue in the case sub judice is "the evidentiary use against" the state "of an attorney's seemingly inconsistent statement at an earlier trial" against a co-indictee "to prove that fundamental portions of the" state's "present case are fabricated." See McKeon at 30. McKeon does not address this issue. Additionally, McKeon dealt with subsequent trials of the same defendant; the case at bar deals with the subsequent trial of a co-indictee.
McKeon involved the third trial of a single defendant. 738 F.2d at 28. The issue was "the evidentiary use against a criminal defendant of an attorney's seemingly inconsistent statement at an earlier trial to prove that fundamental portions of the defendant's present case are fabricated." Id. at 30. The court found that "there is no *Page 840 
absolute rule preventing use of an earlier opening statement by counsel as an admission against a criminal defendant in a subsequent trial" but declined "to subject such statements to the more expansive practice sometimes permitted under the rule allowing use of admissions by a party-opponent." Id. at 31.
McKeon set forth the criterion upon which prior argument or statements of defense counsel may be used as evidence against a criminal defendant:
 Before permitting such use, the district court must be satisfied that the prior argument involves an assertion of fact inconsistent with similar assertions in a subsequent trial. Speculations of counsel, advocacy as to the credibility of witnesses, arguments as to weaknesses in the prosecution's case or invitations to a jury to draw certain inferences should not be admitted. The inconsistency, moreover, should be clear and of a quality which obviates any need for the trier of fact to explore other events at the prior trial. The court must further determine that the statements of counsel were such as to be the equivalent of testimonial statements by the defendant . . .
 Finally, the district court should, in a Fed.R.Evid. 104(a) hearing outside the presence of the jury, determine by a preponderance of the evidence that the inference the prosecution seeks to draw from the inconsistency is a fair one and that an innocent explanation for the inconsistency does not exist.
Id. at 33.
Based on the above criterion, statements by defense counsel may be admissible if such statements were made while in the scope of their employment as defense counsel. See also United States v.Arrington, 867 F.2d 122 (2d Cir. 1989); United States v.Valencia, 826 F.2d 169 (2d Cir. 1987); Williams v. UnionCarbide, 790 F.2d 552 (6th Cir. 1986); United States v. D.K.G.Appaloosas, Inc., 630 F. Supp. 1540 (E.D. Tex. 1986). We see no reason why these same criterion should not be used when the arguments sought to be used are those of the prosecutor in a subsequent trial of the same defendant, or as is the case here, co-indictees.
Applying the McKeon considerations to the record now before us, we find that the proposed evidence offered by the defense under the facts and circumstances of this case was admissible and therefore, exclusion of this evidence was error. The only issue left to be resolved is whether the exclusion of this admissible evidence constituted reversible error.
When evidence has been erroneously excluded we turn to Rule 103 of the Mississippi Rules of Evidence for guidance. Rule 103(a)(2), reads as follows:
 (a) EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and,
 (2) OFFER OF PROOF. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
The comment to this rule indicates that this rule has no effect on the harmless error principle.
The record before us does not contain a transcript of the State's arguments to the jury in the Sutherland trial even though it was admitted as evidence in support of the pre-trial motion for admission. The pertinent portions, however, were read into the record during argument of the motion. The offer of proof required by Rule 103(a)(2) was met in this case.
Rule 103(a)(2) requires that we affirm unless the exclusion affects a substantial right of the party offering the evidence.See Darby v. State, 538 So.2d 1168, 1173-74 (Miss. 1989). However, when dealing with Constitutional issues such as the right to a fair trial involved here, reversal is not required if "on the whole record, the error was harmless beyond a reasonable doubt." United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. *Page 841 
18, 23-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967).
Examination of the record as a whole reveals that at the close of the State's case, the defense made an opening statement and rested without putting on any proof. Hoover's theory of the case was presented to the jury during closing argument. The defense argued that Hoover's only intent was to escape, that he did not have the requisite intent to kill and that Hoover did not shoot Deputy Biddle.
Although the trial court erroneously excluded the arguments of the State from the Sutherland trial, we find that Hoover suffered no actual prejudice. We arrive at this conclusion after careful consideration of the record shows that the defense in fact argued, without objection, that the evidence presented by the State in Hoover's trial showed that Steve Sutherland fired all three shots that killed Deputy Biddle.
If we disregard the proof of the shooting, we are left with the State's proof that Hoover aided and abetted Sutherland before the fact in the killing of Deputy Biddle and, therefore, was a principal. This is not in dispute, as can be seen from the following excerpt from the closing argument of defense counsel:
. . . that Marvin Hoover aided Sutherland in killing Mr. Biddle, and there can't be any question about that. I'm just putting that to the side, because obviously he had his hands around his neck when Sutherland shot him in the side and the pathologist said that that shot would have been fatal. Okay? So — We don't know which one of the three shots killed him first, I guess is a fair way of putting it. So he obviously aided him.
"Judicious application of the harmless-error rule does not require that we indulge assumptions of irrational jury behavior when a perfectly rational explanation for the jury's verdict, completely consistent with the judge's instructions, stares us in the face." Schneble v. Florida, 405 U.S. 427, 431-32, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). Under these circumstances, and taking the record as a whole, we have no problem in holding that the exclusion of evidence in this case was harmless error beyond a reasonable doubt.
The finding of habitual status and the sentence of Hoover to life without parole imposed by the trial court are affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.