ALMON, Justice.
The defendants, Ernest Patterson and William Buck, owners of the Baldwin County Raceway, appeal from a judgment granting injunctive relief to the plaintiffs, all of whom own property close to the racetrack. The issue for our review is whether the trial court abused its discretion by imposing certain restrictions upon the defendants’ operation of the racetrack.
In May 1989, Patterson and Buck decided to construct a racetrack on a 15-acre plot in Baldwin County; this plot is surrounded by an area that is partially residential and partially commercial/industrial. Two of the nearby property owners, Larry Robinson and Ross Luckie, objected to these plans, and they informed Patterson and Buck that they intended to bring an action to enjoin the building of the racetrack. On June 2, 59 plaintiffs joined in the action to prevent the construction of the racetrack. The construction continued, and the racetrack opened for business on Labor Day weekend in 1989.
The case came to trial in June 1991. The trial court held in favor of the plaintiffs, and its August 20 order provides:
“[T]he following evidence has been presented, some of which is in dispute:
“1. The racetrack at issue in this case is an oval track which was completed just prior to the Labor day holiday in 1989.
“2. The owners and operators of the track received a petition from concerned neighbors shortly after work began, and suit was filed on June 2, 1989.
“3. The track is in operation from March through October each year with racing each Friday night, beginning around 6:00 p.m. and ending at various times with the average around midnight. In addition, there are practices on Tuesday night, although they are not always held.
“4. The racing vehicles are unmuf-fled.
“5. The petitioners live at varying distances from the racetrack, with some as close as 1200 feet.
“6. The primary complaint of the neighbors is noise.
“7. In addition to the residences located in the neighborhood of the racetrack, there is also an asphalt plant, a dirt pit, a grocery store, a plant nursery, a furniture plant and a bar.
“8. Sound level readings were taken by the Plaintiffs’ expert on November 11, 1989, at various locations around the racetrack with a range of outdoor readings from 43 dba. [decibels] to 50 dba when racing is not ongoing to readings of 75 dba to 95 dba when racing is ongoing. Indoor readings with the racing ongoing were in the range of 65 dba to 80 dba with windows and doors closed. With windows and doors open the range was from 78 to 87 dba.
“9. According to plaintiffs’ expert witness, an industrial hygienist, 60 dba to 70 dba are in the normal range for communities. 85 dba over an 8 hour period triggers certain safety standards in an industrial setting and over 90 dba would require safety equipment.
“10. Plaintiffs’ real estate appraiser testified that the racetrack created locational obsolescence within a radius of 1.25 mile, ranging from 20% to 65% diminution in value, depending on the distance from the racetrack.
“11. Estimates of costs of construction of the racetrack range from $125,-000-1150,000 to $300,000-$340,000.
“12. Defendants’ real estate appraiser testified that there has been no diminution in the value of the adjacent real property.
*611 “13. Plaintiffs’ expert witness, an audiologist, testified that sound levels above 75 dba outdoors and 45 dba indoors, would interfere with the normal activities of humans.
“Wherefore, the evidence considered, it is hereby ordered, adjudged, and decreed as follows:
“1. That the racetrack constitutes a nuisance, such as would affect an ordinary reasonable person; primarily because of the noise levels, and that it materially interferes with the ordinary comfort of human existence.
“2. That having determined a nuisance exists, the Court now must apply the Comparative Injury Doctrine to determine under what circumstances, if any, the racetrack may continue in operation.
“(a) The evidence presented by each side suggests a substantial economic hardship if they do not prevail. However, since no evidence has been presented to the court as to any possible remedial measures, the Court cannot order such measures. However, to lessen the impact upon defendants, the Court shall permit the continued operation of the racetrack through and including October 25,1991, under the following restrictions:
“(i) Races shall be held only on Friday and no race shall start after 11:00 p.m.
“(ii) Practices may be held on one day other than Friday; however, such practice session shall not extend beyond 8:00 p.m.
“After October 25, 1991, racing shall only be permitted under the above restrictions and as an additional restriction sound levels emitting from the racetrack and extending beyond the real property of the defendants shall not exceed that which is reasonable and comfortable for the ordinary human.”
Both the plaintiffs and the racetrack owners filed motions for modification of the order. After hearing additional testimony of certain expert witnesses and considering certain other additional evidence from the parties, the trial court issued the following order on June 25, 1992:
“1. The Court adopts its previous order entered in this cause on the 20th day of August, 1991; and “2. The Court specifically finds that the defendants are in violation of the Court’s order of August 20, 1991, in that defendants have allowed sound levels to be emitted from the racetrack which extend beyond the real property of the defendants and which exceed those which are reasonable and comfortable for the ordinary human.
“3. The court hereby establishes 78 dba as the level of sound above which defendants shall not cause to' be emitted upon the real property of the plaintiffs.
“4. Defendants shall not conduct any further racing activity at the racetrack until defendants shall first affirmatively show to the Court that defendants shall not emit, cause to emit or allow to be emitted onto plaintiffs’ real property sound levels which exceed 78 dba resulting from defendants’ racing activities.”
Patterson and Buck do not argue that the trial court erred in holding that the racetrack is a nuisance to the plaintiffs; nor do they contest any fact found by the trial court. Patterson and Buck assert that the trial court failed to properly balance the equities of this case as required by the “comparative injury doctrine,” which was applied by this Court in Daniels v. Chapuis, 344 So.2d 500 (Ala.1977). See Brown v. Allied Steel Products Corp., 273 Ala. 184, 136 So.2d 923 (1962). Patterson and Buck specifically argue that they have implemented remedial measures, such as banning the loudest engines from the racetrack and requiring all drivers to install special mufflers on their cars, and that the trial court ignored these measures in its June 1992 order. They also argue that the 78-dba standard, adopted by the trial court in the June 1992 order, should refer to the acceptable level of sound inside the structures on the plaintiffs’ properties rather than outside those structures. This contention stems from the fact that the plaintiffs’ expert witness, an audiologist, testified that there is a 20-dba drop when sound is measured within a structure rather than *612 without a structure. Patterson and Buck argue that this standard would allow the racetrack to remain a viable economic operation. They also contend that a fair balancing of the equities must take into account the semi-industrial nature of the area and the heightened noise levels resulting from the industries in the area.
Courts traditionally have enjoyed considerable discretion in fashioning equitable remedies. Davis v. Hester, 582 So.2d 538 (Ala.1991). Thus, a reviewing court is limited to determining whether the trial court abused its discretion in fashioning the remedy. Alabama Power Co. v. Drummond, 559 So.2d 158 (Ala.1990); Hood v. Neil, 502 So.2d 749 (Ala.1987). The comparative injury doctrine serves to channel this inherent discretion by requiring the court, if feasible under the circumstances, to place restrictions on a business rather than to completely enjoin its operation. Daniels, supra; 42 Am.Jur.2d Injunctions § 56 (1969) and cases cited therein. (The court does have the power to totally enjoin a business operation under appropriate circumstances, Hundley v. Harrison, 123 Ala. 292, 26 So. 294 (1899).) When a trial court does impose restrictions, this Court is limited to determining if the imposition of restrictions is supported by competent evidence in the record. Daniels.
Here, the trial court did not abuse its discretion by restricting the operation of the racetrack in the June 25, 1992, order. As to the defendants’ argument that the trial court ignored its remedial measures, we note that the plaintiffs’ expert conducted sound tests in March and May 1992, and found that the noise levels had not substantially diminished. Because there was evidence that the remedial measures did not abate the nuisance, the trial court did not err. See Lee v. Rolla Speedway Inc., 668 S.W.2d 200, 205 (Mo.App.1984).
Moreover, there is competent evidence in the record to support the trial court’s adoption of the 78-dba standard, measured outside the plaintiffs’ homes (58 dba inside). If the defendants’ standard had been adopted by the trial court, the racetrack would have been allowed to emit 98 dbas of sound onto all parts of the plaintiffs’ properties that are not within the walls of a structure. This would have prevented certain of the plaintiffs from enjoying their yards during the Friday night racing and the Tuesday night practices, because the plaintiffs’ expert testified that persons cannot communicate unless they are within 18 inches of one another when the dba level exceeds 91. Moreover, the expert stated that a level of 84 dba is comparable to the noise generated by a lawnmower. The comparative injury doctrine does not require the trial court to force these plaintiffs to stay inside their homes on two nights a week for eight months of the year.
Finally, the defendants’ contention that in fashioning the remedy the trial court did not consider the noise created by the nearby industries is without merit.' The trial court in its first order specifically noted the semi-industrial character of the area; the court also heard expert testimony that the noise generated by industrial equipment was far less annoying than the noise generated by the race cars.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.