# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01582-SCT

*RANDY DALE JACKSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/1999 |
| TRIAL JUDGE: | HON. WILLIAM STRATTON AGIN |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WESLEY THOMAS EVANS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JUDY T. MARTIN |
| DISTRICT ATTORNEY: | RICHARD D. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/03/2001 |
| MOTION FOR REHEARING FILED: | 5/24/2001; denied 8/16/2001 |
| MANDATE ISSUED: | |

**BEFORE BANKS, P.J., MILLS AND DIAZ, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On February 24, 1999, Randy Dale Jackson was convicted in the Madison County Circuit Court of the May 11, 1997, murder of Henry "Val" Jackson. He was sentenced to life imprisonment. He timely perfected this appeal.

## FACTS AND PROCEEDINGS BELOW

¶2. On May 11, 1997, Randy Dale Jackson (hereinafter "Jackson") was involved in an altercation with Henry "Val" Jackson (hereinafter "the victim") at a supermarket where the victim was employed. Jackson testified that the victim threatened him, hit him with his fist, slapped his face with a rubber boot, and kicked him out of the store. When the victim ejected Jackson from the store, Jackson threatened him by saying, "I'm going to burn your ass."

¶3. Jackson then attempted to drive his car the 1.8 miles to his house for the admitted sole purpose of retrieving a gun. He ran his car into a ditch on the way, however, and was driven the remainder of the distance by a passing motorist. He testified that he was in a state of rage. Once Jackson retrieved his 20-gauge shotgun containing one cartridge of buckshot and two rounds of birdshot, he ran through the woods back to the store which took at least ten minutes. Upon returning to the store, Jackson yelled at the victim from outside. Jackson alleged that the victim reached for his pistol. Jackson testified that he pulled the trigger on his shotgun without aiming and shot the victim through the store's plate-glass window. Jackson stated that he did not realize the shot had hit the victim until Jackson was wrestled to the ground and held by his uncle Dwight Elmore, who was at the scene. Elmore's wife informed Jackson that the victim was hit.

¶4. Two witnesses, Ada Harris and Eugene White, Jr., testified that they were outside the store at the time of the shooting. Harris testified that Jackson walked up, tapped on the store window with a gun, and said to the victim, "I got you now, mother f\*\*ker." Jackson then shot once. White corroborated this testimony, although he could not hear exactly what Jackson said before firing the gun.

¶5. Tanya Branning was inside the store purchasing a pack of cigarettes from the victim at the time of the shooting. She testified that the victim had retrieved her cigarettes from the shelf behind him and was handing her the change from the transaction when Jackson appeared at the store window and said, "MF, I'm fixing to kill you." Jackson shot the victim immediately. Branning stated that the victim "did not reach for a gun. He did not have time."

¶6. At the close of the State's case, Jackson moved for directed verdict, which was denied. The jury returned a guilty verdict on February 23, 1999. A motion for new trial was subsequently filed and denied.

## ANALYSIS

### I. WHETHER THE PREJUDICIAL EFFECT OF THE INTRODUCTION OF ALLEGEDLY GRUESOME PHOTOGRAPHS OUTWEIGHED THEIR PROBATIVE VALUE AND CONSTITUTES REVERSIBLE ERROR BY THE TRIAL COURT.

¶7. Jackson contends that gruesome photographs of the victim were erroneously admitted as their prejudicial effect outweighed their probative value. The record reflects that three photographs of the victim were admitted at trial. S-3 depicts the portion of the victim's body that could be seen from in front of the store counter, as the body was found at the scene. S-7(a) depicts the clothed body of the victim with a closer view of the wounds, as the body arrived for autopsy. S-7(b) depicts a close-up of the wounds on the victim's unclothed body at autopsy.

¶8. Jackson argues that the testimony of Dr. Steven Hayne was sufficient to describe the victim's wounds and the cause of death. He contends that the photographs were gruesome and inflammatory and served only to prejudice Jackson's defense. Jackson asserts that the prejudicial effect of the photographs outweighed their probative value.

¶9. The admissibility of photographs generally lies within the sound discretion of the trial court; and, absent an abuse of discretion, the court's decision will be upheld on appeal. *Taylor v. State*, 672 So. 2d 1246, 1270 (Miss. 1996). As to probative value versus prejudice, this Court held in *Foster v. State*, 508 So. 2d 1111, 1117-18 (Miss. 1987), that because of the discretion vested in the trial court, the task of an appellate court reviewing a M.R.E. 403 ruling is not to re-engage in the Rule 403 balancing process. Rather, the task is simply to determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence. *Id.*

¶10. In support of his argument, Jackson cites the only case in which this Court has reversed based on the admission of gruesome photographs. *See McNeal v. State*, 551 So. 2d 151 (Miss. 1989). The photographs at issue in *McNeal* depicted a "full-color, close-up view of the [victim's] decomposed, maggot-infested skull." *Id.* at 159. This Court found the admission of these photographs violative of M.R.E. 403. The photographs in the case sub judice, though unpleasant, are not nearly so gruesome. *Id.*

¶11. Further, the photographs have considerable probative value. Photograph S-3 shows the close proximity of the victim to the window where the shot originated and also reveals the victim's relation to the

cigarettes he was selling and to the cash register at the time of his death. S-7(a) and S-7(b) demonstrate the location and nature of the victim's wounds. In *Edwards v. State*, 737 So. 2d 275, 304 (Miss. 1999), this Court upheld the admission of similar photographs since they "accurately depict[ed] the wounds inflicted upon the victims and the location and posture of the bodies at the scene of the crime."

¶12. The probative value of the photographs in the case sub judice far outweighed any prejudicial effect. Thus, the trial court did not abuse its discretion in admitting the photographs. We find Jackson's argument to be without merit.

## II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO GRANT A DIRECTED VERDICT.

¶13. Jackson argues that the trial judge erred by refusing to grant a directed verdict. He asserts that he shot the victim in self defense and that he acted in the heat of passion. He contends that "the shooting did not take place with malice aforethought and with cool deliberation."

¶14. A motion for directed verdict challenges the sufficiency of the evidence. *McClain v. State*, 625 So.2d 774, 778 (Miss.1993). In *Wetz v. State* 503 So. 2d 803, 808 (Miss. 1987), this Court reviewed the denial of a murder defendant's motion for directed verdict and stated:

[W]e must, with respect to each element of the offense, consider all of the evidence-not just the evidence which supports the case for the prosecution-in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

(citations omitted).

¶15. When "considering whether or not the verdict is contrary to the overwhelming weight of the evidence, this Court must accept as true all the evidence which supports the State's position, together with all inferences reasonably flowing therefrom, in the light most favorable to the State's theory of the case." *Britt v. State*, 520 So. 2d 1377, 1379 (Miss. 1988).

¶16. Miss. Code Ann. § 97-3-19(a)(1) defines murder as "[t]he killing of a human being without the authority of law by any means or in any manner. . .[w]hen done with deliberate design to effect the death of the person killed, or of any human being. . . ." Jackson admitted that he shot the victim. What he contests is whether he did so with deliberate design.

¶17. Examining the evidence in the light most favorable to the verdict, this Court finds no merit to Jackson's argument. There was ample evidence of Jackson's deliberate design to kill the victim. Jackson stated that he was going to "burn [the victim's] ass." He then left for his house to retrieve a gun; ran his car off the road in the process; got a ride from someone else for the remainder of the trip to his house; once there, retrieved a gun; walked for at least ten minutes through the woods to return to the store; stood outside the store window; shouted, "MF, I'm fixing to kill you"; and then shot and killed the victim.

¶18. Jackson's argument that the killing was in self-defense is without merit since he was the aggressor, at least at the point of his return to the store. Also, the self-defense argument is refuted by Branning, the eyewitness who was in the store at the time of the shooting. Branning stated unequivocally that the victim "did not reach for a gun. He did not have time."

¶19. Jackson further argues that the killing occurred in the heat of passion. The facts do not support this argument. Jackson testified that he was enraged by the altercation with the victim after which he was ejected from the store. However, Jackson had ample time to temper his anger on the trip home to retrieve the gun and during his walk back to the store.

¶20. Considering the facts in the light most favorable to the verdict, this Court finds that the evidence is sufficient to support the jury's verdict and that the trial court appropriately denied Jackson's motion for directed verdict.

### III. WHETHER THE EVIDENCE RELATING TO THE VICTIM'S ALLEGED PROPENSITY FOR VIOLENCE SHOULD HAVE BEEN ADMITTED IN THIS MURDER TRIAL.

¶21. Jackson argues that the trial court erred by excluding evidence of the victim's alleged propensity for violence. Jackson attempted to call Charles Blackmon, Andre Randall, and Jimmy Boone to testify to specific acts involving the violent nature of the victim. Jackson argues that the testimony should have been admitted since he asserted a self-defense theory.

¶22. The trial court found that "there has been no evidence at this time that the victim was in any way attempting to seek out the defendant in order to do him any serious bodily harm at the time the-the shooting may have occurred." The State argues that the trial court did not altogether preclude the testimony regarding the victim's violent nature but rather insisted that Jackson could not introduce evidence of specific acts until he presented evidence of self-defense. The State's interpretation of the ruling appears to be accurate. Jackson never raised the issue for consideration by the trial court thereafter.

¶23. An examination of M.R.E. 404(a)(2) and 405(a) is helpful in resolving this issue. Regarding Rules 404 and 405, this Court has stated:

> The general rule is that character evidence may not be admitted to prove action in conformity therewith. Rule 404, M.R.E. However, Rule 404(a)(2) specifically authorizes inquiry by a criminal defendant into a victim's character. This exception enables defendants to prove that the victim was the initial aggressor and that the defendant acted in self-defense. Comment, Rule 404, M.R.E. Once Rule 404 has been satisfied, character evidence in the form of opinion or reputation evidence is admissible without further restriction. Rule 405(a), M.R.E. However, when character evidence passes through Rule 404(a)(2), and is offered in the form of specific instances of conduct, it is admissible only on cross-examination. Rule 405(a).

> * * *

> However, specific instances of conduct in cases where character or the trait of character is "an essential element of a charge, claim, or defense . . ." are admissible whether on cross or direct examination. Rule 405(b). According to *Heidel v. State*, 587 So. 2d 835 (Miss. 1991), past acts are admissible in cases where a defendant alleges self-defense, concluding that the character trait of

violence was an "essential element" of the defense under 405(b).

\* \* \*

Rule 405(b) allows specific instances of conduct to be admitted if its restriction is satisfied, without regard to whether it was first admissible under Rule 404. Rule 405(a) begins, "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. . . ." Hence, 405(a) is connected to 404; but, since 405(b) has no such qualifying clause, it admits evidence independently of Rule 404, even though the overlap may yield mirrored results.

*Newsom v. State*, 620 So. 2d 611, 613-14 (Miss. 1993).

¶24. Jackson cites *Newsom* in support of his proposition that the testimony regarding the victim's propensity for violence should have been admitted. In *Newsom* the defendant claimed that he shot and killed the victim in self-defense. *Id.* at 612. A defense witness testified that he had seen the victim in a number of previous fights. *Id.* at 613. The trial judge excluded this testimony, and this Court held the judge in error for doing so. *Id.* at 613-14. However, this Court found the error harmless since the victim's violent nature was admitted through other testimony including that of the defendant. *Id.* at 614. A similar situation is presented in the case sub judice.

¶25. Assuming arguendo that Jackson has a legitimate claim of self defense, one finds that testimony regarding specific instances of the victim's violent nature should have been admitted in accordance with Rule 405(b). However, as was the case in *Newsom*, the trial court's error, if present, was harmless.

¶26. "A denial of a substantial right of the defendant must have been affected by the [erroneous] evidentiary ruling" before reversal is required. *Id.* "[I]n this case, that right is the accused's right to a fair trial." *Id.* (citing *Ponthieux v. State*, 532 So. 2d 1239, 1248 (Miss. 1988); M.R.E. 103(a)). When the right to a fair trial is involved, reversal is required unless "on the whole record, the error was harmless beyond a reasonable doubt." *Hoover v. State*, 552 So. 2d 834, 840 (Miss. 1989).

¶27. Examining the record as a whole, this Court finds that the alleged error by the trial court was harmless. Proof of the victim's violent nature was ultimately admitted.

¶28. Jackson testified regarding two previous occasions where the victim had threatened him with a gun. According to Jackson's testimony, the victim had a reputation in the community for "bullying folks, and every time you see him, he's got a pistol in his pocket talking crazy." Jackson had never seen the victim pull a gun on anyone else.

¶29. Furthermore, Andre Randall and Charles Blackmon were allowed to testify as to the victim's reputation as to violence, though no specific instances were introduced. Randall testified that the victim "wasn't that peaceful at all to me." He stated that the victim liked "to keep a pistol and talk crazy." Charles Blackmon testified that the victim was "not really a violent person. He never really did anything to me." As to the victim's reputation for peacefulness, Blackmon stated, "Well, that could go both ways. Some people he helped, and some he didn't."

¶30. This evidence was presented to the jury. Testimony from Blackmon, Randall, and Boone regarding the victim's specific acts of violence would have added little to Jackson's case. Exclusion of such testimony was

not reversible error. Therefore, we find no merit to this argument.

## CONCLUSION

¶31. We find no merit in the foregoing assignments of error. We, therefore, affirm Randy Dale Jackson's murder conviction and life sentence imposed by the Madison County Circuit Court.

¶32. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**