## SAMPSON QUINN- *v.* STATE.

### [64 South. 738.]

1. HOMICIDE. *Cause of death. Disease. Instructions. Burden of proof.*
   If death ensues from a wound given in malice, but not in its
   nature mortal, but from which, being neglected or mismanaged,
   or in connection with other disease, the party .dies, the party
   who gave the wound is guilty of murder.

2. SAME.
   But if the wound is not in its nature mortal, and death results
   solely from an entirely independent cause, the person inflicting
   the wound cannot be held responsible for the death.

3. HOMICIDE. *Instructions. Burden of proof.*
   An instruction that "if death ensues from a wound given in
   malice, but not in its nature mortal, but from which, in con-
   nection with other disease, the party dies, this will not excuse
   the party who gave it, but he will be held guilty of murder,
   unless it clearly and certainly appears, either by the evidence
   offered on behalf of the state or the defendant, that the disease
   disconnected from the wound and not the wound itself, was the
   sole cause of his death, for if the wound had not been given,
   the party had not died," is erroneous since it relieves the state
   from the burden of proving, beyond all reasonable doubt, the
   guilt of accused, as accused was entitled to an acquittal, unless
   it appeared beyond a reasonable doubt that the disease was not
   the sole cause of his death, but that his death was contributed to
   by the wound.

4. SAME.
   Such instruction was further erroneous in advising the jury in
   this connection that "if the wound had not been given the party
   had not died." If the disease was the sole cause of the death,
   it cannot be said that if the wound had not been given the party
   had not died.

APPEAL from the circuit court of Grenada county.
HON. J. A. TEAT, Judge.

Simpson Quinn was convicted of manslaughter and ap-
peals.

The facts are fully stated in the opinion of the court.

*S. A. Morrison,* for appellant.

The testimony of the physicians show that deceased died with pneumonia: Men are not hung or imprisoned in Mississippi because one man being or having been struck in a quarrel, dies with pneumonia.

The instruction given the state absolutely puts the burden of proof on the defendant and compels him to carry it throughout; the burden of proof was on the state to trace the death to the blow; it did nothing of the kind but forced this burden on the defendant. Your attention is especially called to the instruction in this case, it is copied *verbatim* from the *Crum case,* 64 Miss. 1: Merely because this instruction had been passed on by the court in the Crum case, was no reason for its being given in the case at bar; facts are quite different; this instruc- tion was quite correct in the Crum case but in the pres- ent case, on different conditions, it is wholly wrong and takes from defendant one of his prime rights, shifting the burden of proof upon him at the most critical stage of his trial. To sustain my position as herein taken, it is hardly necessary to refer to books, a glance at the lan- guage of the instruction, taken in connection with the evi- dence shows the instruction as full of errors as of sen- tences. The jury could not do otherwise, if this instruc- tion is the law, provided they believed anything of the testimony of the wife of the deceased. Greenleaf on Evi- dence last Edition and Bishop on Criminal Law (8 Ed.), sec. 639. I am wholly unable to find any authority to sustain this instruction; certainly the Crum case sustains it only as the facts of the Crum case justifies and as that case is not in point on the record as shown by the present case, it is wholly held to its own fact. Quoting again from this instruction, ''for if the wound had not been given, the party had not died. Surely with the record showing that deceased was up, going all about the neigh- borhood, with a rag on his head, one or two things are certain: Either he was negligent of his life with the un-

healed wound (this view in view of the claim of the state)
consequently was responsible for his own death, or the
wound was not at all dangerous: In either case, the de-
fendant was clear in the eye of the law and the instruc-
tion was wrong from this standpoint.

The plain fact is this: The defendant never received
a mortal wound, or even a wound of real danger; such
being the case, the copied instruction is foreign to the
facts and circumstances and should not have been given.
. . . Other errors might be pointed out in this in-
struction but sufficient here is given, it appears to me
to cause a reversal of this cause. It is and must be
clear to this court, that there was prejudice in the mind
of the jury and error on part of the court in giving the
"Crum case instruction." Wherefore the case should be
reversed and dismissed, or remanded for new trial.

*Geo. H. Ethridge,* assistant attorney-general, for the
state.

Practically, the sole contention of the appellant in the
brief is that the pneumonia contributed to the death of
the deceased and that he would not have died but for his
exposure and the contracting of pneumonia as a result
thereof, his contention being that while the wound con-
tributed probably to the death of the deceased, it was not
the sole cause of the death, and that the appellant should
not be convicted where the death was brought about par-
tially by the pneumonia.

Counsel for the appellant states at the opening of his
brief that one of the state's instructions was a mere copy
of the state's instruction set out in the case of *Crum* v.
*State,* 64 Miss. 1, and that this case gave the appellant
no show for a defense. The cause of *Crum* v. *State,* is
sound law and in discussing the law of the case, the court
said, at the bottom of page 4: "For the proposition that
for a dangerous wound resulting in death from misman-
agement, the party inflicting could not be held liable for

murder, no authority is cited either by the court or by counsel in that case. Nor has counsel in his brief in the case now before us cited one, nor has our own investigation discovered that there are any. On the contrary, the decisions seem to be uniform and numerous in support of the instruction given by the court below, which is almost a literal copy of the law as given by 3 Greenleaf on Evidence, section 139.''

This rule was the rule at common law and has been handed down from the time whereof the memory of man knoweth not to the contrary.

In Wharton on Homicide (3 Ed.), p. 42, section 36, it was said: "If a wound or injury is inflicted which is adequate and calculated to cause death, and death ensues as the result of the wound, the person who inflicted it cannot exonerate himself from criminal liability by showing that some conduct or negligence of the wounded or injured man or his attendants lessened the chances of his surviving his injuries, and thus caused the death. And the rule is the same though it appears that the deceased might have recovered if he had taken proper care of himself. It is no defense that the deceased or his companions, by their own negligence, contributed to the result, if the result would not have happened without the misconduct of the accused. Nor will neglect to obtain proper medical treatment upon the part of a person injured relieve the person injuring him from criminal responsibility for the injury, where death results."

It is clear that this is correct law and is sound reasoning as well. It would be practically impossible to maintain a conviction in any case where death was not instantaneous if the defendant could escape by showing that proper medical treatment would have saved the life of the deceased.

Argued orally by *S. A. Morrison,* for appellant.

SMITH, C. J., delivered the opinion of the court.

Appellant was indicted for murder and convicted of manslaughter. He and Gus Commander, the deceased, had a controversy, in which he struck Commander on the head with an empty whisky bottle and fractured his skull. The wound was not in its nature mortal, according to the testimony of the attending physicians; but some time thereafter Commander contracted pneumonia, and died about two months after the infliction of the wound, according to the testimony of the physicians, from the combined effect of the wound and pneumonia. He would have recovered from the effect of either, according to their testimony, had it not been for the other trouble. One of appellant's defenses was that Commander's death was caused solely by pneumonia; the wound not contributing thereto. One of the physicians testified that the wound had no "connection or relation to" pneumonia.

One of the instructions granted for the state was as follows: "The court instructs the jury, for the state, that if death ensues from a wound given in malice, but not in its nature mortal, but from which, being neglected or mismanaged, or in connection with other disease, the party dies, this will not excuse the party who gave it; but he will be held guilty of murder, unless it clearly and certainly appears, either by the evidence offered on behalf of the state or the defendant, that the deceased's own neglect and want of care, or other disease disconnected from the wound, and not the wound itself, was the sole cause of his death, for if the wound had not been given the party had not died."

It will be observed that this instruction submits to the jury two propositions: First, appellant's liability in event death was the result solely or partially from neglect of the wound; and, second, his liability in event death was the result solely or partially of a disease disconnected from the wound. In so far as the first proposition is concerned, the instruction is supported by *Crum* v. *State*, 64 Miss. 1, 1 So. 1, 60 Am. Rep. 44.

The language in which the second proposition was sub-
mitted, omitting that pertinent only to the first, is as fol-
lows: ''The court instructs the jury, for the state, that
if death ensues from a wound given in malice, but not
in its nature mortal, but from which, . . . in connec-
tion with other disease, the party dies, this will not
excuse the party who gave it; but he will be held guilty
of murder, unless it clearly and certainly appears, either
by the evidence offered on behalf of the state or the de-
fendant, that the . . . disease disconnected from the
wound, and not the wound itself, was the sole cause of
his death, for if the wound had not been given the party
had not died.'' It is undoubtedly the law that, if death
results from the combined effect of a wound inflicted with
malice and of a disease disconnected from the wound the
person inflicting the wound is guilty of murder; but it is
also the law that if the wound is not in its nature mortal,
and death results solely from an entirely independent
cause, the person inflicting the wound cannot be held re-
sponsible for the death.  Bishop's Criminal Law (8 Ed.),
sec. 639.

Since the burden of proof is on the state throughout a
criminal cause, and since guilt must always appear be-
yond a reasonable doubt before a conviction can be had,
the court erred in instructing the jury that appellant ''is
guilty of murder unless it clearly and certainly appears
. . . that . . . disease disconnected from the wound,
and not the wound itself, was the sole cause of his death;''
appellant being entitled to an acquittal unless it appeared
from the evidence beyond a reasonable doubt that this
disease was not the sole cause of his death, but that his
death was caused or contributed to by the wound.

The instruction is further erroneous in advising the
jury in this connection that ''if the wound had not been
given the party had not died.'' If the disease was the
sole cause of the death, it cannot, of course, be said that
if the wound had not been given the party had not died.

*Reversed and remanded.*