SCHROER *v.* STATE

No. 42903 March 23, 1964 160 So. 2d 681

*H. T. Carter, David W. Whitaker, Jr., Billy J. Jordan,* Columbus, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Albert J. Schroer, Jr., appellant, was convicted in the Circuit Court of Lowndes County of manslaughter, for the killing of James A. (Bub) Thompson, and was sentenced to ten years in the penitentiary. On this appeal he argues his conviction is against the great weight of the evidence, errors in granting and refusing certain instructions, and error in overruling his motion for a new trial on the ground of the newly discovered evidence. The latter question involves the efficient cause of death, which followed a beating with fists, where the victim was suffering from the preexisting physical condition of hypertension. We affirm the verdict and judgment.

Schroer was an airman stationed at the Columbus Air Force Base. On the night of February 6, 1963, he and two other airmen, Pollan and Simon, with three girls went to a place known as the Golden Bell north of Columbus. There they danced, ate sandwiches, and Schroer and two others drank either all or most of a bottle of vodka. Schroer stated he was not drunk at the time of the incident, but admitted he had at least five drinks.

The deceased, Bub Thompson, and his brother, Ollie Thompson, Jr., lived with their parents. Ollie was an employee of an amusement company which furnished coin-operated machines. It was part of his duty to be on call to furnish change for customers who needed it. Woodrow Vaughn, proprietor of the Golden Bell, requested some, and Ollie and Bub went to that place to deliver it. There are conflicts in the evidence, particularly as to who started the fight. However, these were questions for the jury, and the evidence amply warranted it in finding: When the Thompsons arrived at the Golden Bell, Ollie put the sack of change on the

counter, and Schroer used foul language to him about the money. Bub said nothing, except he did not want any trouble. Bub and Ollie then sat down at the counter, and Schroer came up behind Bub and grabbed him around the head and shoulders. When Ollie went to help his brother, Pollan hit him in the face and broke his glasses. Neither Ollie nor Bub hit Schroer, but Ollie was fighting with Pollan and probably the other airman, Simon. The testimony of Vaughn, the proprietor, confirmed this version.

Schroer hit Bub with his fist, they fell to the floor, and Schroer was sitting on or next to Bub holding him and beating him on the head with his fists. The blows were hard and many. Vaughn told him to get up, he wouldn't do it, but was still beating the boy, so finally Vaughn put a gun to Schroer's head and he got up. Louise Lambrose, a waitress, heard a racket, turned around and saw the stool at the bar, with Bub and Schroer going to the floor. Bub "hit the floor" and Schroer began beating him "with both hands", which were together. Defendant continually hit Thompson with both hands on the side of his head. Bub said, "Somebody get him off of me, please", two or three times, but Schroer continued hitting him on the head with fast movements of both hands together. Bub did not fight back, and did not move during most of this period. The witness did not see Bub attempt to hit Schroer, who did not stop beating the boy until Vaughn stuck a gun in his face.

Dr. L. C. Costley, a pathologist, made an autopsy of Thompson, seventeen hours after his death which occurred at the Golden Bell. He found extensive hemorrhages among all layers of the coverings of the brain and the ventricles, with a great deal of external damage. There was much swelling over the brow, particularly the left temporal region, and the left frontal region above the left eyebrow. There was extensive dis-

coloration of the soft tissues about each eye. The right side of the face also was markedly swollen, particularly over the angle of the jaw. There were numerous superficial scratches. He found that Thompson suffered a massive hemorrhage of the brain area, and was of the opinion that death was a direct result of the hemorrhages within the cranial cavity, which in turn were caused by multiple blows to the head and neck. It would be difficult to determine whether the blows on the left or right side were the worst. He discovered no fractures.

Dr. Richard L. George examined Thompson shortly after his death. Both the right and left sides of his face were severely bruised. The right side and ear were bruised, purple and swollen. Thompson had received repeated blows to the area of the right ear, and probably part of the cheek. His death certificate stated that death was due to brain damage from blows to the head and neck. The primary or main blow was above the left eyebrow.

Defendant offered a number of character witnesses, including fellow servicemen, and prominent citizens from his home town of Valdosta, Georgia. Schroer testified that Ollie cursed him and his companions, who tried to quiet the matter down, but Ollie would not agree. As he turned around to leave, Bub grabbed him and pushed. Ollie jumped at him, and he hit Bub, after Bub had struck him several times. They fell to the floor and "that is when his head hit that cement down there," on the left side. Schroer stated that at first he did not know Bub was unconscious. He had no intention of hurting him, only protecting himself. But he admitted hitting Bub four or five times in the face, while the latter was lying on the floor and he was on his knees. Others in defendant's party supported various parts of defendant's version. But they all said that Schroer crouched over Bub holding him with one hand, and striking him

in the face with the other, although the victim gave no resistance.

██ ██ In summary, the evidence was ample to support the verdict of the jury. At a time when Thompson was sitting on a stool at the bar, Schroer attacked him from the rear, beat him about the head, they fell, and defendant continued to strike him, although the latter pleaded with someone to please get defendant off of him. It became necessary for Vaughn to break up the fight with a pistol. After the fight was over, Schroer tried to run out of the building and get away, but was stopped by the proprietor. The jury was justified in finding that Schroer was the aggressor, and he unmercifully beat Thompson about the head; and this beating was the direct cause of the multiple hemorrhages which resulted in his death.

Nor was there any error in overruling defendant's supplementary motion for a new trial. The motion was based upon newly discovered evidence, to the effect that Thompson suffered from high blood pressure or hypertension, and from February 11 to 17, 1962, he was confined in a hospital under a diagnosis of influenza and hypertension. However, Dr. George was still of the opinion that the multiple blows to the head and neck were the immediate cause of Thompson's death, although he conceded it was possible he had some bleeding due to spontaneous rupture. It was "probable" he had bleeding due to external trauma. Dr. Costley said that the additional information about hypertension would not affect his opinion as to the cause of death, which was multiple blows around the head and neck resulting in a massive hemorrhage of the brain. He thought it was highly improbable that Thompson had a spontaneous hemorrhage.

The consequences of an act, which is the efficient cause of the death of another, are not excused by the preexisting physical condition of the person killed or

by his low vitality, which rendered him unable to withstand the shock of the wound or blows inflicted. This may be so even though without the predisposed condition the blow would not have been fatal, provided that a causal connection between the blow and the fact of death is shown. 26 Am. Jur., Homicide, § 52; Annos., 51 L. R. A. (NS) 877, 880 (1914), 16 Ann. Cas. 578 (1910), Ann. Cas. 1916C, p. 693.

■■■ The unlawful act or omission of accused need not be the sole cause of death. The test of responsibility is whether the act of accused contributed to the death, and, if it did, he is not relieved of responsibility by the fact that other causes also contributed. Moreover, responsibility also attaches where the injury materially accelerates the death, although the death is proximately occasioned by a preexisting cause. 40 C. J. S., Homicide, § 11.

1 Wharton's Criminal Law and Procedure (Anderson ed. 1957), §201, p. 450, summarizes the general rule in this way:

"It is well settled that the consequences of an act which is the efficient cause of the death of another are not excused, nor is the criminal responsibility for causing death lessened, by the pre-existing physical condition of the person killed, at the time the act was done, or by his low vitality, which rendered him unable to withstand the shock of the wound inflicted, and without which pre-existing condition the blow would not have been fatal, if a causal connection between the blow and the fact of death is made to appear." See also Warren on Homicide (1938), § 59.

An early case from this jurisdiction applying these principles was Crum v. State, 64 Miss. 1, 1 So. 1 (1886). Cf. Quinn v. State, 106 Miss. 844, 64 So. 738 (1914) (erroneous instruction). Other cases applying the above stated rules are: Springer v. State, 129 Miss. 589, 92 So. 633 (1922); Bumpus v. State, 166 Miss. 276, 144 So.

897 (1932); Watts v. State, 210 Miss. 236, 49 So. 2d 240 (1954); Buford v. State, 219 Miss. 683, 69 So. 2d 826 (1954); Houston v. State, 220 Miss. 166, 70 So. 2d 338 (1954); Conner v. State, 179 Miss. 795, 177 So. 46 (1937).

██ ██ Whether accused's act was the efficient or proximate cause of the death, in that it materially contributed to its happening, or on the other hand, whether a pre-existing physical disease or condition was an independent, intervening cause may in many cases require a drawing of a line, so as to exclude one or the other. However, in the instant case the great weight of the evidence reflects that the multiple blows to Thompson's head, inflicted by defendant, were the efficient, proximate cause of his death.

██ ██ ██ The state's instruction number 3 was not error for two reasons: There was evidence which would warrant the jury in finding that blows by defendant caused Thompson to fall to the floor and to strike his head on it. Some of this evidence was circumstantial in nature, and also defendant contended that Thompson struck his head on the floor. Further, when all of the instructions are read together, both sides sufficiently presented their versions of the events based upon the testimony. There was no error in refusing defendant's requested instruction concerning the circumstances under which defendant acted, and their justification under such assumed circumstances. The jury was amply instructed about defendant's right of self defense. See Robinson v. State, 234 Miss. 149, 105 So. 2d 766 (1958).

Affirmed.

*Lee, C. J., and Rodgers, Brady and Patterson, JJ.,* concur.