# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-00480-SCT

*CALVIN LACY*

*v.*

*STATE OF MISSISSIPPI*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/14/95 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MERRIDA COXWELL |
| | CHARLES RICHARD MULLINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/9/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/30/97 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

¶1. Calvin Lacy was convicted of manslaughter and sentenced to twenty years with the Mississippi Department of Corrections, with five years suspended and fifteen years to serve. On appeal, Lacy raised as issues the trial court's failure to admit the co-defendant's confession into evidence and ineffective assistance of counsel. The Court of Appeals found no merit in either claim and affirmed the conviction and sentence. After denial of his motion for rehearing Lacy filed this petition for certiorari, asserting that the Court of Appeals erred both in finding that the confession of the co-defendant was properly excluded and that the issue had been waived for failure to object at trial to the judge's ruling, and in failing to recognize the ineffectiveness of trial counsel.

¶2. In view of our holding as to the first issue, it is not necessary that we consider the claim of ineffective assistance of counsel.

**Facts**

¶3. When leaving his aunt's house, Calvin Lacy backed his car into a car belonging to Willie Brown's fiancee. Lacy was in the process of leaving his name and other information with bystanders when Brown arrived on the scene. Brown and Lacy talked about the problem, and Lacy left. He then went to his mother's house and told her and his brother John what had happened. John and Calvin then went back to the scene in John's car. Calvin exited the car and soon became involved in a fight with Brown. John got out of the car and fired two shots in the air from a nine millimeter pistol in order to stop the fighting. Testimony as to what happened next is disputed; some say that Calvin took the gun from his brother and shot Brown as he was returning from his house after getting his own gun. Others say that Lacy went to the car and Brown went into his home, returning to the door with a gun. The question at the center of the case is whether John or Calvin fired the shots. All agreed that shots were fired from John Lacy's car as it left the scene. Brown died of a gunshot wound to the chest.

¶4. According to Calvin and his mother, John called her later that evening and told her that he had shot Brown. She in turn called attorney Richard Rehfeldt, and John and Calvin went to the police station with him the next day, both giving statements. Thereafter they were jointly indicted for Brown's murder. It is the initial statement of John Lacy, in which he confessed to the shooting, that counsel believes should have been admitted at trial.

¶5. In addressing the admissibility of the statement, the Court of Appeals found that the trial court had employed the proper legal standard in making its decision and that it did not abuse its discretion. The Court of Appeals further concluded that Lacy never presented the trial court with corroboration required for admission under Miss.R.Evid. 804(b)(3), and that he never objected to the trial court's decision, thereby waiving his right to raise it as error on appeal.

**Discussion**

¶6. John's written statement, given in the presence of attorney Rehfeldt, when John and Calvin turned themselves in to authorities, confessed to the shooting. It appears that John initially pled guilty and later withdrew the plea. Although this was pointed out to the trial court after the jury rendered its verdict, the guilty plea was not offered in evidence. At trial, Calvin Lacy was represented by Jimmie Marshall who advised the court that he planned to request admission of the confession of John Lacy as an exception to the hearsay rule. Marshall planned to introduce the statement pursuant to Miss.R.Evid. 804(b)(3), *Statement Against Interest,* which allows, as an exception to the hearsay rule:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

¶7. Mr. Marshall argued that Rule 804(b)(3) was applicable because the witness, John, would be an

unavailable witness upon claiming his Fifth Amendment privilege not to testify. In support of that position, he directed the judge's attention to **Hooker v. State**, 516 So. 2d 1349 (Miss. 1987).

¶8. The State objected claiming that the statement was inadmissible under the rule. Lacy's counsel merely argued that the purpose of the rule was to admit statements such as John's and that no rational person would make a statement like this if it were not true. The trial court gave the following reasons for denying the admission of the statement:

> THE COURT: Well, he would make that statement if the brother is on trial first and if his statement comes in to exculpate his brother and his brother was not convicted, and then he goes on trial the next day and doesn't make any statement at all, and then he doesn't get convicted either, wouldn't it be in his interest to have his statement come in and hear it and exculpate his brother, have his brother acquitted, and then have his trial and not offer any statement whatsoever with the hope that he too would be acquitted and then nobody gets convicted for the murder? Then wouldn't that be the reason to have that statement come in this trial like that, and isn't that exactly what 804(b)(3) seeks to guard against? That seems to be what it is saying.

> MR. MARSHALL: Your Honor, I don't think--disagree with the Court. I think this is exactly what the Rule is designed to do is to allow as an exception.

> THE COURT: All right. The motion to exclude the statement is granted. It may be premature, because we may not get to that, but we have dealt with the issue, we have thrashed out the argument. And if it's offered, it's going to be excluded based on a motion to exclude and citing 804(b)(3) as the reason.

¶9. At this point, counsel for Lacy argued no further regarding the statement but proceeded with the defendant's case. After calling Darren Hill, a friend who had been with Lacy the evening of the shooting, defense counsel called John Lacy to the stand. John answered general questions as well as a few questions about his activities just prior to the shooting but when asked directly about what happened at the scene he pled the Fifth Amendment. Counsel for Lacy continued to ask questions about the shooting, and John continued to invoke the privilege. The State objected, claiming that counsel was trying to get statements in "through the back door." The court sustained the State's objection. Defense counsel then stated, "Your Honor, at this point, then, I will renew my motion to have the statement admitted into evidence under Rule 804." The court replied, "All right. A record has been made in connection with that motion. The motion is denied for reasons previously stated."

¶10. On appeal Lacy is represented by counsel other than his trial counsel.

¶11. The Court of Appeals first held that the exclusion of the statement was waived, finding that Lacy had failed to object. However, the authorities relied on by the Court of Appeals are not truly dispositive of the question. In **Ballenger v. State**, 667 So. 2d 1242 (Miss. 1995), the defendant objected at trial to a jury instruction on one ground and then attempted to raise another ground on appeal. Such did not happen with Lacy; he argued Miss.R.Evid. 804(b)(3) the entire time and bases his appeal on that rule. In **Robinson v. State**, 662 So. 2d 1100 (Miss.1995), the appellant attempted to raise prosecutorial misconduct on appeal when no objection to the prosecutor's actions at trial had been raised. Finally in **King v. State**, 615 So. 2d 1202 (Miss. 1993) the defendant was precluded from arguing improper cross-examination of one witness when no objection was made at trial.

¶12. Miss.R.Evid. 103(a) requires that an objection be made only to a rule *admitting* evidence, not excluding it. Furthermore, the rule requires the objection must give the specific grounds therefor only "if the specific ground was not apparent from the context." *See Peterson v. State*, 518 So. 2d 632, 635 (Miss. 1987). In *Kettle v. State,* 641 So. 2d 746 (Miss. 1994), we held that the defendant's motion in limine regarding introduction of evidence properly preserved the issue for appeal and an objection was not necessary. There, the Court quoted with approval the explanation of the rule given by the Colorado Supreme Court in *Uptain v. Huntington Lab., Inc*., 723 P. 2d 1322 (Colo. 1986).

> Presentation of issues by means of motions in limine offers opportunities to expedite trials, eliminate bench conferences, avoid juror annoyance and permit more accurate rulings . . . . When, as here, a specific evidentiary issue is presented to the trial court in advance of trial, the primary purpose of the contemporaneous objection rule--to permit the trial court to accurately evaluate the legal issues and to enable the appellate courts to apprehend the basis of the objection--are satisfied. Requiring an additional formal objection and ruling in all cases would undermine the benefits provided by the motion in limine procedure. We conclude that under the circumstances of this case, where the issue of the admissibility of the specific evidence was fully argued to the trial court on the same grounds argued by the non-prevailing party on appeal, the plaintiff's motion in limine constituted a timely objection for purposes of CRE [Miss.R.Evid.] 103(a)(1).

*Uptain*, 723 P. 2d at 1330-31 (footnote omitted).

¶13. When the case is, as here, one of the exclusion of evidence, the substance of the evidence must be made known to the court by an offer of proof *or* made "apparent from the context within which questions were asked." Miss.R.Evid. 103(a)(2). Here, Lacy offered the statement and called the court's attention to the rule and to this Court's holding in *Hooker,* and in his argument, Lacy's attorney told the court that the statement was a confession to killing Jones. In a timely manner, Calvin presented his intention to offer John Lacy's confession to the crime with which he was charged; he made the substance of the evidence clear to the trial judge; he gave the specific rule under which he maintained that the evidence should be admitted; and he offered the statement after John had refused to answer the questions put to him. The Court finds that counsel's actions were sufficient to preserve the issue for review.

¶14. While the trial judge only said that the statement was excluded under Miss.R.Evid. 804(b)(3), it appears from the argument of the State that the controversy centered on the trustworthiness of John's statement. The rule provides that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." The Court of Appeals reasoned that the trial judge "indirectly determined that sufficient corroborating circumstances, if any, indicating the trustworthiness of the statement did not exist to justify their admission." We respectfully disagree with this conclusion. John's statement was given under oath in the presence of his attorney on the day following the shooting, and three witnesses for the State testified that the shots came from a car occupied only by John and Calvin. The testimony also indicated that while two spent shells were found on the ground, they were accounted for by the warning shots which were fired by John. It is argued that the trajectories of the fatal shots indicate that if Calvin had fired them, the spent shells from those shots would have been likely to also have landed on the ground, while if they were fired

by John they would have ejected into the car. All agreed that John initially had the pistol and fired it in the air. The State's evidence also was to the effect that Calvin took the pistol from John before they returned to the car. Immediately before John was put on the witness stand, Darrell Hill testified, contrary to the evidence offered by the State, that Calvin never took the gun from John, although he could not see into the car.[(1)]

¶15. Corroboration as required by Rule 804(b)(3) is not required to be absolute, and the sufficiency of the corroboration must be assessed in the light of the importance of the evidence and the offeror's fundamental constitutional right to present evidence. In *Chambers v. Mississippi,* 410 U. S. 284 (1973), the United States Supreme Court declared:

> Few rights are more fundamental than that of an accused to present witnesses in his own defense. *E.g., Webb v. Texas*, 409 U.S. 95 (1972); *Washington* v. *Texa*s, 388 U.S. 14, 19 (1967); *In re Oliver*, 333 U.S. 257 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

*Id.* at 302.

¶16. Writers have noted that the requirement that a declaration against interest be corroborated is not the same as that for corroboration of substantive offenses. Rather, it is only required that the court determine clearly that a reasonable person believe that the statement might have been made in good faith. 5 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence* § 804.06[5][b] (2d ed. 1997). In *Jones v. Hatchett,* 504 So. 2d 198, 203 (Miss. 1987), this Court stated corroboration requires that "[t]here must exist some circumstance in the making of the statement itself which would indicate its reliability. . . . The statement against interest exception to the hearsay rule is based on the recognition that '[n]o reasonable person would make such a statement . . . if the statement were not true.'" (citing Comment to Rule 804(b)(3), Miss. R. Evid.).

¶17. In *Davis v. State,* 872 S.W.2d 743 (Tex. Crim. App. 1994), the Court of Criminal Appeals addressed the issue of corroborating circumstances in determining whether the testimony of the mother of the accused regarding brother of the accused should be admitted. Her testimony was that another son had confessed to the crime. Noting that no definitive test existed to gauge the reliability of the declaration, the Court identified the factors to be considered as including:

> [W]hether the guilt of the declarant is inconsistent with the guilt of the accused, whether the declarant was so situated that he might have committed the crime, the timing of the declaration and its spontaneity, the relationship between the declarant and the party to whom the

declaration was made, and the existence of independent corroborating facts.

*Davis,* 872 S.W. 2d at 749.

¶18. The State cites ***Williams v. State***, 667 So. 2d 15 (Miss. 1996), for the proposition that declarations against penal interests which inculpate others are generally looked upon unfavorably and are seen as untrustworthy. In ***Williams***, the Court held that the statement of the defendant's wife, given while in custody and offered by the State was inadmissible as it lacked trustworthiness, because of the wife's motive to lie and her traumatic mental state while in custody. The statement was also inadmissible under the Confrontation Clause. However, in Lacy's case, the statement is offered by him, not the State, and is one that inculpates the declarant and exculpates him. This presents the unusual situation of the State claiming lack of confrontation as a ground for excluding a statement that may otherwise fall within a hearsay exception. We have held in ***Parker v. State***, 606 So. 2d 1132 (Miss. 1992), when addressing the admission of a hearsay statement, that there was not a counterpart to the individual's right of confrontation inuring to the benefit of the State.

¶19. Here, John's statement was sufficiently corroborated, given its compelling importance to the defense, by the circumstantial evidence, the fact that John's gun was used, that John fired it at the scene, that at least one witness contradicted the testimony that Calvin took the gun from John, and the fact that the statement was given to law enforcement authorities the day following the shooting. It is the opinion of this Court that, under the facts of this case, the trial court erred in denying admission of the statement and that sufficient corroborating circumstances existed.

¶20. **REVERSED AND REMANDED TO THE CIRCUIT COURT OF HINDS COUNTY FOR A NEW TRIAL.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**

1. John's mother testified that on the night of the shooting he called her, crying, and said that he thought he had shot a man and was afraid that he would never see her again. However, this testimony was given after John's statement was excluded. Calvin also testified that John fired the shots.