# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-KA-01839-COA

| | |
|---|---|
| **BRANDY NICOLE WILLIAMS A/K/A BRANDY WILLIAMS A/K/A BRANDY N. WILLIAMS** | **APPELLANT** |

**v.**

| | |
|---|---|
| **STATE OF MISSISSIPPI** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 09/10/2012 |
| TRIAL JUDGE: | HON. RICHARD W. MCKENZIE |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES ANDRE DE GRUY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF CAPITAL MURDER AND SENTENCED TO LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | REVERSED AND REMANDED: 12/02/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND CARLTON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Brandy Williams was convicted of the capital murder of George County Sheriff Garry Welford, in violation of Mississippi Code Annotated section 97-3-19(2)(a) (Rev. 2014). We find reversible error on an evidentiary ruling and a jury instruction. We reverse Williams's conviction and remand for a new trial.

FACTS

¶2. On July 21, 2010, George County Sheriff Garry Welford was killed when a pickup truck ran over him. Although it is disputed who was driving the truck at the time it killed Sheriff Welford, Chris Baxter and Williams occupied the truck. Both were indicted and tried for capital murder in separate trials. Baxter was convicted first, followed by Williams. Baxter was called as a defense witness at Williams's trial but asserted his Fifth Amendment right to not testify.

¶3. On April 26, 2010, Baxter pled guilty to the possession and manufacture of methamphetamine. His sentencing hearing was set for July 19, 2010, and he remained free until then. When Baxter failed to appear for his sentencing, a bench warrant was issued for his arrest.

¶4. George County deputies were familiar with Baxter. They knew of his relationship with Williams. They were also familiar with the vehicles Baxter and Williams each drove. However, on July 21, because their vehicles were both being repaired, Baxter and Williams were driving Williams's father's truck to run errands in Lucedale, Mississippi.

¶5. Deputy Bobby Daffin was serving process when he spotted Williams's father's truck. He knew that Baxter and Williams used the truck, so Daffin made a U-turn and pulled in behind the truck. He notified the sheriff's central dispatch of the encounter, and he initiated pursuit. A high-speed chase began.

¶6. Other deputies, and Sheriff Welford, knew of the active warrant, and joined in the effort to stop the truck. They headed to a location where they might intercept the truck. As the pursuit began, Daffin testified that Williams was the driver and another person was

2

slouched down in the passenger seat. Daffin believed the passenger was Baxter, based on his knowledge that Williams and Baxter were inseparable. After losing sight of the truck and traveling some distance, Daffin saw the truck again with its brake-lights on while stopped at an intersection. Daffin testified that upon approaching the truck, it took off in a reckless manner at a high speed. He pursued the truck with his siren and blue lights turned on. Daffin testified that he pursued the truck at speeds in excess of 100 miles per hour, and the truck passed through traffic in no-passing zones and drove two vehicles off of the road.

¶7. Just before the roadblock, Daffin lost sight of the truck when it turned toward the area where the roadblock was set up. Two witnesses confirmed Daffin's version of events. They both testified that a female was driving the truck and a George County Sheriff's Department vehicle was in pursuit.

¶8. Sheriff Welford announced over the radio that he and Chief Deputy Tony Keel were going to intercept the truck at an intersection. Sheriff Welford instructed Daffin to not pursue too hard. Keel and Sheriff Welford were joined by two other officers, Investigator Justin Strahan and Deputy Duane Bowlin. All four officers stood outside of their vehicles in the right-of-way.

¶9. Keel testified that the law enforcement vehicles were parked so as not to block the intersection entirely. A pathway was left open in the middle of the road between the vehicles. Just before the truck reached the roadblock, Keel stated that he heard the truck's engine and said: "Here it comes." At that moment, Keel saw the truck coming around a curve, and he and Sheriff Welford drew their guns. The truck engine accelerated, and the

3

truck turned to the left toward Keel and Sheriff Welford. Keel, Bowlin, and Strahan testified that the truck traveled to the left of the road, and it ran over Sheriff Welford. Sheriff Welford's body hit the hood of the truck and was thrown. The truck did not stop after the collision.

¶10. Keel was able to jump out of the way. He felt a wind from the passing truck and heard an impact. Keel turned and saw a body tumbling, at which point Strahan announced over the radio that the truck had struck Sheriff Welford. Keel did not see who was driving the truck at the moment of impact.

¶11. Bowlin testified that he was walking toward Sheriff Welford to find out what the plan was when he heard the truck come up the hill. Bowlin testified that he could not see the driver, but that the passenger's face appeared to be a man. He thought the man was Baxter, whom he knew. Before trial, Bowlin told an investigator from the Mississippi Bureau of Investigation that he could not tell if the passenger was male or female.

¶12. Strahan testified that he had moved away from the open area to avoid the oncoming truck. Daffin tried to locate the truck afterwards but could not find it.

¶13. Megan Jarmin testified that she saw the truck cross Highway 98 moments after it passed through the roadblock. The truck did not stop and swerved on and off the road. Jarmin stated that she had a good view of the driver, who was a male with acne complexion.

¶14. The truck was later found in a ditch with a significant dent in the center of the hood. Expert testimony established that Sheriff Welford's DNA was on the hood and side of the truck. Also, Baxter's DNA was found on the truck's steering wheel. No female DNA was

4

found in the truck.

¶15.    On July 22, 2010, Williams and Baxter were both arrested. After a jury trial, Williams was convicted of capital murder, in violation of Mississippi Code Annotated section 97-3-19(2)(a) (Rev. 2006). It is from this judgment that Williams now appeals, raising issues which we consider in the following order: 1) the trial court erred in excluding Baxter's statement to authorities; 2) the trial court erred in giving instruction S-7A on liability for a contributing cause of death; 3) the trial court erred in refusing a defense jury instruction on identification evidence; 4) the trial court erred in giving instruction S-5A on accomplice liability; 5) the trial court erred in preventing the defense from introducing the State's closing argument from Baxter's trial; and 6) the verdict was against the overwhelming weight of the evidence.

## ANALYSIS

I.    *Whether it was reversible error to exclude Baxter's statement to law enforcement under Mississippi Rule of Evidence 804(b)(3).*

¶16.    Williams argues that the trial court erred in excluding Baxter's post-arrest interview. The standard of review concerning the admission or exclusion of evidence is abuse of discretion. *Williams v. State*, 991 So. 2d 593, 597 (¶8) (Miss. 2008).

¶17.    Williams asserts that Baxter's statement to law enforcement falls within the hearsay exception of "statement against interest," pursuant to Mississippi Rule of Evidence 804(b)(3). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c).

5

However, if a statement falls within one of the hearsay exceptions found in Mississippi Rule of Evidence 804, it may be admissible, as long as the declarant is unavailable.

¶18.     Rule 804(a)(1) provides that a declarant is unavailable when the witness "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement."  Rule 804(b)(3) requires that the declarant be unavailable and defines "statement against interest" as:

> [A] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

¶19.     The following evidence comes from Baxter's account of the events to law enforcement in an approximately hour-long recorded interview the day of his arrest.  Baxter stated that on the day of the accident, he had been strung-out on methamphetamine.  Initially, Baxter stated that he was driving when Daffin began following him and that he did not stop when he saw blue lights.  Once pressed by the interrogating officers, however, Baxter admitted that Williams was driving at first, but they switched seats at some point before the accident, making him the driver for the remainder of the chase.  Baxter stated that Williams had wanted to stop, but he would not listen.  When Baxter saw Daffin behind their truck at the beginning of the chase, Baxter stated that he said to Williams, "Bitch, go."  Baxter stated that he forced Williams to go with him, and he had previously slapped Williams and made

6

her nose bleed. According to Baxter, he did not know that he had run over Sheriff Welford; instead, he stated that he may have "nudged" one of the officers while driving through the roadblock. He admitted to driving on, even after he saw blue lights at the roadblock. Baxter stated that he saw three officers at the roadblock but they scattered because he never slowed down. He reiterated that Williams was a mere passenger when he drove through the roadblock, and that he would not let her out of the truck. Baxter stated that Williams had a chance to get out of the truck when it slid into the embankment, but he did not "believe [he] was gonna let her out of the cab really."

¶20. In a pretrial motion in limine, the State argued that Baxter's statement was irrelevant and did not tend to fully exculpate Williams. Calling it a "close call," the trial court ruled that Baxter's statement to law enforcement was inadmissible. At the close of the State's evidence, Williams asked the court to reconsider and to allow the introduction of the statement under Rule 804(b)(3). The State argued that Baxter's statement was untrustworthy. The court again ruled the statement was inadmissible.

¶21. The State argues that Baxter's statement is untrustworthy because it contained an inconsistency and because Baxter was a felon who might have been under the influence of drugs when he made the statement. The only inconsistency in Baxter's statement was his initial statement that he, rather than Williams, was driving when the chase began. He quickly abandoned this version when confronted by the officers and everything else about his statement was corroborated by multiple witnesses. As to the suggestion that his statement was inadmissible because he was a felon and might have been under the influence of drugs,

these facts go to the weight of the statement. It bears noting that the State viewed the statement as trustworthy when it offered it against Baxter at his trial.

¶22. Williams argues that Baxter's statement exculpates her and that it is corroborated by other independent reliable evidence— Jarmin's testimony that the truck was driven by a male moments after it struck Sheriff Welford, and the facts that Baxter's DNA was found on the steering wheel and no female DNA was recovered from the truck. Williams contends that Baxter's statement is self-incriminating, and by excluding it, Williams was prevented from presenting reliable exculpatory evidence. She also claims that the statement was relevant to her defense that, if she was guilty of anything, it would be manslaughter.

¶23. At the request of this Court, the parties submitted supplemental briefs addressing whether three specific cases were applicable to this issue: *Carr v. State*, 655 So. 2d 824 (Miss. 1995); *Lacy v. State*, 700 So. 2d 602 (Miss. 1997); and *Hartfield v. State*, 2014 WL 116603 (Miss. Ct. App. Jan. 14, 2014).

¶24. In *Carr*, the defendant was on trial for capital murder. Carr sought to admit parts of a statement his co-defendant, Simon, gave to police. Simon gave three different versions of the crime: first, that Carr gave Simon items stolen from the victims and that a man named Henderson might have committed the crimes with Carr; second, that Simon did not want to say who was with him when "we" committed the murders; and third, that Simon killed the victims. *Carr*, 655 So. 2d. at 833-34. Carr wanted to introduce only the portion of the statement in which Simon claimed that he killed the victims. The supreme court upheld the exclusion of the statement because it was untrustworthy and, as a whole, did not exculpate

8

Carr. *Id.* at 834-35.

¶25. In *Lacy*, 700 So. 2d 602, Calvin Lacy and his brother, John, were indicted for manslaughter for shooting a man. The proof showed that John fired two shots, and that the shot which killed the victim came from John's car. Some witnesses said Calvin fired the fatal shot. John confessed to killing the victim, first, to his mother, and then to police in the presence of his attorney. *Id.* at 604 (¶4). The trial court excluded John's confession at Calvin's trial. *Id.* at 605 (¶8). The Mississippi Supreme Court adopted a test used by the state of Texas in *Davis v. State*, 872 S.W.2d 743 (Tex. Crim. App. 1994). The court considered the following factors in assessing reliability:

> Whether the guilt of the declarant is inconsistent with the guilt of the accused, whether the declarant was so situated that he might have committed the crime, the timing of the declaration and its spontaneity, the relationship between the declarant and the party to whom the declaration was made, and the existence of independent corroborating facts.

*Lacy*, 700 So. 2d at 607 (¶17) (quoting *Davis*, 872 S.W.2d at 749). The court found that John's confession was sufficiently corroborated and should have been admitted. *Id.* at 608 (¶19).

¶26. In *Hartfield*, the defendant was charged, along with Natasha Graham and Ethan Dixon, with murdering his wife. Graham wrote letters to her boyfriend, to her mother, and to the defendant, Hartfield, in which she admitted her own guilt and exculpated Hartfield. Graham was called a witness at Hartfield's trial but invoked her Fifth Amendment right and was therefore unavailable. The trial court excluded the letters. *Hartfield*, 2014 WL 116603 at *3. On appeal, this Court reversed the conviction, finding that the letters were

9

corroborated because they contained details of the crime that only a participant could have known, and which were consistent with the physical evidence of how the crime was committed. *Id.* at *8.

¶27. To determine whether Baxter's statement to law enforcement should have been admitted pursuant to Rule 804(b)(3), we must determine whether that statement meets all of the requirements of that rule. First, Baxter was unavailable as a witness pursuant to Rule 804(a)(1), because he invoked his Fifth Amendment right not to testify. *Jacobs v. State*, 870 So. 2d 1202, 1208 (¶13) (Miss. 2004). Second, Baxter's statement to law enforcement was contrary to his own interest. Absent coercion or threat, of which there is no evidence, no person would have admitted to the murder had they not actually killed someone. Third, the statement tended to subject him to criminal liability. Baxter's admission that he was driving the truck at the time Sheriff Welford was run over could and did subject him to a capital-murder conviction. Fourth, a reasonable person in Baxter's situation would not have made such a statement unless he believed it to be true, as Baxter faced life without parole based on his conviction. Finally, there is corroborating evidence to indicate the trustworthiness of the statement. Baxter admitted to driving the vehicle at the time of Sheriff Welford's death, and a witness put Baxter behind the wheel of the truck, as did DNA evidence.

¶28. The court has held that the sufficiency of the corroboration must be assessed in light of the importance of the evidence and the offeror's fundamental constitutional right to present evidence, and such corroboration, as required by Rule 804(b)(3), does not have to be absolute. *Lacy*, 700 So. 2d at 607 (¶15).

10

¶29.     In applying this test, it is obvious that the statement should have been admitted. Baxter admitted to driving the truck at the time it ran over Sheriff Welford, and specifically stated that Williams was not driving. Baxter was situated to commit the crime. He acknowledged that he had taken methamphetamine and was running from law enforcement. Baxter admitted he was driving when the investigators questioned him the day after Sheriff Welford was killed. Finally, there was independent corroborating evidence: DNA placed Baxter behind the wheel at some point, and a witness testified that a male was behind the wheel just after Sheriff Welford was struck.

¶30.     In a criminal case, a defendant is entitled to present her case and defense, and it is "fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Randall v. State*, 806 So. 2d 185, 200 (¶19) (Miss. 2001) (quoting *Keys v. State*, 635 So. 2d 845, 848-49 (Miss. 1994)).

¶31.     In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the United States Supreme Court stated:

> Few rights are more fundamental than that of an accused to present witnesses in his own defense. *E.g.*, *Webb v. Texas*, 409 U.S. 95 (1972); *Washington v. Texas*, 388 U.S. 14, 19 (1967); *In re Oliver*, 333 U.S. 257 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where

11

> constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

*Lacy*, 700 So. 2d at 607 (¶15) (quoting *Chambers*, 410 U.S. at 302) (parallel citations omitted).

¶32. Mississippi Code Annotated section 97-3-19(2)(a) defines capital murder as the killing of a peace officer while acting in his official capacity and with knowledge that the victim was a peace officer. Had the jury heard Baxter's statement to law enforcement, it is possible that they could have found that Williams was not driving at the time Sheriff Welford was killed and that Williams sought to end the chase and was not an active participant in Welford's death. Thus, she would not have been found guilty of capital murder.

¶33. The State asserts that Williams would have been guilty of capital murder regardless of whether she was driving or was a mere passenger at the time of Sheriff Welford's death, because Williams was driving at the beginning of the chase. We disagree. Baxter told law enforcement officers that Williams tried to get him to stop. This evidences a possible defense of abandonment. This Court has stated: "Abandonment is a defense if the attempt to commit a crime is freely and voluntarily abandoned before the act is put in process of final execution, if there is no outside cause prompting the abandonment." *Barnes v. State*, 763 So. 216, 218-19 (¶6) (Miss. Ct. App. 2000) (citing *Bucklew v. State*, 206 So. 2d 200, 204 (Miss. 1968)). Had the jury heard Baxter's statements and believed them, Williams could not have been found guilty of capital murder; the jury could instead have found Williams guilty of manslaughter under Mississippi Code Annotated section 97-3-47 (Rev. 2006).

12

¶34. Because of this, the trial court abused its discretion and committed reversible error in excluding Baxter's statements.

     *II.     Whether the trial court erred in giving instruction S-7A.*

¶35. The standard of review concerning the grant or refusal of jury instructions is abuse of discretion. *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012).

¶36. Williams argues that the trial court erred when it gave jury instruction S-7A, which provided:

> The Court instructs the Jury that it is not necessary that an unlawful act of the Defendant be the sole cause of death. Responsibility attaches if the act of the Defendant contributed to the death. If you believe the Defendant committed an unlawful act or aided and abetted another in committing an unlawful act that contributed to the death of Garry Welford, then the Defendant is not relieved of responsibility by the fact that other causes may have also contributed to his death.

¶37. Williams objected, contending that the instruction concerned a contributory cause of death, which was not relevant, since the sole cause of death was the truck striking Sheriff Welford. The defense argued that this instruction was peremptory on the issue of guilt if the jury believed Williams was driving when the felony-evasion offense began.

¶38. The State argued that the instruction was proper under *Holliday v. State*, 418 So. 2d 69 (Miss. 1982). In *Holliday*, the supreme court addressed the issue of an unlawful act or omission being the sole cause of death, and stated:

> The unlawful act or omission of [the] accused need not be the sole cause of death. The test of responsibility is whether the act of [the] accused contributed to the death, and, if it did, he is not relieved of responsibility by the fact that other causes also contributed.

13

*Id.* at 71 (quoting *Schroer v. State*, 250 Miss. 84, 91, 160 So. 2d 681, 684 (1964)).

¶39.    The State argued that the instruction was necessary to counter the defense argument that Williams was not driving at the moment Sheriff Welford was struck, and that Williams should bear responsibility, regardless of who was driving, as an aider and abettor. The defense argued that the aiding and abetting instructions adequately explained Williams's liability. Calling it a "close call," the trial court granted the instruction.

¶40.    The defense was correct. Three separate aiding and abetting instructions were given. S-4C instructed the jury, in part, that "if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other person just as though the defendant has committed the act or engaged in such conduct." Instruction S-5A instructed the jury that "one who willfully, unlawfully, and feloniously aids and abets, assists, participates or otherwise encourages the commission of a crime is just as guilty under the law as if he or she had committed the whole crime with his or her own hands." Instruction D-7 instructed the jury that "[i]n order to find Brandy Williams guilty as an aider and abettor you must be convinced, beyond a reasonable doubt that Brandy Williams possessed a community of criminal intent as [sic] Christopher Baxter, either before or at the time the act was committed."

¶41.    The aiding and abetting instructions adequately explained the source of Williams's liability. By adding an instruction on contributing causes of death, the court needlessly created a risk that the jury would convict unless the defense could prove that the initial flight was not a contributing cause of the death. Our supreme court has reversed convictions where

14

jury instructions have shifted the burden of proof to the defendant. In *Quinn v. State*, 106 Miss. 844, 64 So. 738 (1914), the defendant struck the victim in the head with a whiskey bottle. The blow itself was non-fatal, but the victim subsequently died from pneumonia. Doctors testified that neither the blow nor the pneumonia alone would have caused the death. The jury was instructed that:

> if death ensues from a wound given in malice, but not in its nature mortal, but from which, being neglected or mismanaged, or in connection with other disease, the party dies, this will not excuse the party who gave it; but he will be held guilty of murder, unless it clearly and certainly appears, either by the evidence offered on behalf of the state or the defendant, that the deceased's own neglect and want of care, or other disease disconnected from the wound, and not the wound itself, was the sole cause of his death, for if the wound had not been given the party had not died.

*Id.* at 848, 64 So. at 739. The supreme court reversed the conviction because the instruction placed the burden on the defendant to prove that the pneumonia alone would have caused the death.

¶42. Instruction S-7A improperly shifted the burden of proof to the defense to prove that Williams was not driving at the moment of impact, and that she had abandoned the flight. Here, Williams was driving in the beginning of the flight from law enforcement, but based on the evidence from Baxter's statement to police, the jury could find that Williams abandoned the crime. That evidence was not admitted at trial. We have found that it was reversible error for the trial court to exclude that evidence. Because the basis of Williams's liability was adequately explained in the aiding and abetting instructions, the trial court abused its discretion in giving instruction S-7A.

15

*III.   Whether the trial court erred in refusing a defense instruction on identification testimony.*

¶43.    Williams asserts that the trial court erred in refusing to give the defendant's identification jury instruction.  The instruction stated in part: "If . . . you are not convinced beyond a reasonable doubt that [Williams] is the person who was driving at the time the Sheriff was hit, then you must find her not guilty."  This is an incorrect statement of the law. Williams may be guilty if she aided and abetted Baxter even if she was not driving. Additionally, our supreme court has stated that "[a]n identification jury instruction is necessary only when the identification of the suspect hinges on one witness." *Victory*, 83 So. 3d at 375 (¶23).  More than one witness identified Williams driving the truck during at least part of the chase.  This assignment of error is without merit.

*IV.   Whether it was reversible error to give instruction S-5A on accomplice liability.*

¶44.    Williams argues that it was error for the trial court to give instruction S-5A, which provided that "one who willfully, unlawfully, and feloniously aids and abets, assists, participates or otherwise encourages the commission of a crime is just as guilty under the law as if he or she had committed the whole crime with his or her own hands."  Williams argues that the instruction permitted the jury to convict Williams if she did anything to further any element of the crime, even if she abandoned her participation.  "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012) (citation omitted).  S-5A must be read together with S-4C, which provided in pertinent part:

16

[b]efore any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate herself in some way with the crime and participate in it with the intent to bring about the crime. . . . [Y]ou may not find the defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

Read together, and with the addition of a proper abandonment instruction, the instructions fairly and accurately state the law. There is no merit to this assignment of error.

V. *Whether the trial court erred in preventing the defense from introducing the State's closing argument from Baxter's trial.*

¶45. Williams claims that the trial court erred in refusing to allow her to introduce the State's closing argument from Baxter's trial. In that argument, the State contended primarily that Baxter was driving the truck when it struck Sheriff Welford, but that even if Williams was driving, she was under Baxter's control and he was responsible for the death of Sheriff Welford. In Williams's trial, the State argued that Williams was driving, but even if she was not, she was liable as an aider and abettor.

¶46. In *Hoover v. State*, 552 So. 2d 834 (Miss. 1989), the supreme court considered whether the doctrine of judicial estoppel prevented the State from arguing in one trial that one defendant fired the fatal shots, and in a separate trial of his co-defendant, arguing that the co-defendant fired the shots. The court concluded that the doctrine of judicial estoppel does not apply in criminal cases when the parties are not identical. *Id.* at 838. Consequently, the State could argue inconsistent theories in different trials of different defendants. *Id.* at 839. The court ruled, however, that Hoover should have been allowed to introduce the

State's closing argument in his co-defendant's trial as an admission by a party opponent under Mississippi Rule of Evidence 801(d)(2), but that the inability to do so was harmless error. *Id.* at 840. The court followed the reasoning in *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984).

¶47.   In *McKeon*, the defendant was on trial for conspiracy to export firearms to Ireland. Two trials ended in mistrial. At the second trial, defense counsel stated in his opening statement that the defendant's wife had no involvement at all, and that the defense would call an expert witness to testify that the wife had not photocopied incriminating documents. Before the third trial, the prosecution was able to procure an expert witness that would effectively disprove this position. *Id.* at 28. In his opening statement in the third trial, defense counsel changed the defense theory and stated that the defendant's wife had made the photocopies but that she and the defendant had been duped by a third party. *Id.* The trial court granted the prosecution's request to introduce the prior opening statement as a party admission under Federal Rules of Evidence. 801(d)(2)(B) and (C)[1] in order to prove that the defense case was fabricated and to show the defendant's consciousness of guilt. *Id.* at 29.

¶48.   In *Hoover*, the court adopted the criterion established by *McKeon* for the introduction of prior party admissions:

> Before permitting such use, the district court must be satisfied that the prior argument involves an assertion of fact inconsistent with similar assertions in

---

[1] Federal Rules Evidence 801(d)(2)(B) and (C) authorize the admission of statements adopted by a party or made by a person authorized by the party to make the statement, respectively. Mississippi Rules Evidence 801(d)(2)(B) and (C) are materially the same.

a subsequent trial. Speculations of counsel, advocacy as to the credibility of witnesses, arguments as to weaknesses in the prosecution's case or invitations to a jury to draw certain inferences should not be admitted. The inconsistency, moreover, should be clear and of a quality which obviates any need for the trier of fact to explore other events at the prior trial. The court must further determine that the statements of counsel were such as to be the equivalent of testimonial statements by the defendant.

*Id.* at 840 (quoting *McKeon*, 738 F.2d at 33). In the trial of Hoover's co-defendant, the State did not argue that either Hoover or the co-defendant had fired the fatal shots, but argued simply that the co-defendant had fired the shots. *Id.* at 838. At Hoover's trial, the State argued that either defendant could have fired the shots, but that Hoover was responsible, either for firing the shots, or for aiding and abetting his co-defendant. *Id.* at 839.

¶49. *Hoover* is distinguishable from the present case. In Baxter's trial, the State acknowledged that either Baxter or Williams could have been driving. In the State's closing argument in Baxter's trial, which the defense sought to introduce, and which is a part of the record, the State argued:

> [Baxter] is guilty under our law if he's driving or directing . . . . We told you from the beginning we don't have a satellite video of the inside of that car, but we know he was either driving . . . or directing . . . . [The defense is that] [s]he was driving. Members of the jury, who cares. It does not matter. . . . We put on the witnesses. We called them, even the ones that said I didn't see who was driving. I saw Brandy driving, the female driving. She almost killed us. We put them all in because I told you from the beginning we want you to consider everything. We're not hiding anything. . . . [I]t's not just about driving. It's about directing too. . . . [I]f he was driving, he's guilty. If he was directing, he's guilty.

¶50. This situation is totally unlike the fabricated case in *McKeon*. It is also unlike the argument in *Hoover* that the co-defendant was the shooter, followed by the theory that either

19

the co-defendant or Hoover was the shooter. This situation is nothing more than an "invitation[] to a jury to draw certain inferences," which the *Hoover* court noted "should not be admitted." *Hoover*, 552 So. 2d at 840. The trial court did not err in refusing to admit the State's closing argument from Baxter's trial.

> VI. *Whether the verdict was against the overwhelming weight of the evidence.*

¶51.    When reviewing a challenge to the weight of the evidence, the evidence is weighed in the light most favorable to the verdict, and "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted). "[T]he issue as to whether or not an admitted homicide is murder or manslaughter is ordinarily a question for the jury on conflicting evidence." *Kinkead v. State*, 190 So. 2d 838, 840 (Miss. 1966). Our decision to reverse the conviction and remand for a new trial makes this issue moot.

¶52.    **THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GEORGE COUNTY.**

   **LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.   IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**